

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-1998

# Teamsters Pension v. Littlejohn

Precedential or Non-Precedential:

Docket 97-1856

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Teamsters Pension v. Littlejohn" (1998). *1998 Decisions.* Paper 204.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/204

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 26, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1856

TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA
& VICINITY; WILLIAM J. EINHORN

v.

SILAS LITTLEJOHN; TEAMSTERS LOCAL UNION NO. 115

        Teamsters Local Union No. 115,

        Appellant

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 95-cv-07556

Argued July 20, 1998

Coram: STAPLETON, ROSENN, Circuit Judges and
RESTANI, Court of International Trade*

(Filed August 26, 1998)

Walter H. DeTreux, III (argued)
2833 Cottman Avenue
Philadelphia, PA 19149
Counsel for Appellant

_____

*The Honorable Jane A. Restani, Judge, United States Court of
International Trade, sitting by designation.

          Frank C. Sabatino (argued)
          Schnader, Harrison, Segal & Lewis
          1600 Market Street, Suite 3600
          Philadelphia, PA 19103
          Counsel for Appellees

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents an unusual question pertaining to the liability of a surviving unincorporated local union after merger with it by another unincorporated local union for a debt of the latter. The district court held that pre-merger notice of the debt owed by the non-surviving local was not required and that the surviving local union was liable for the debt. The surviving local timely appealed. We affirm.

I.

The facts of this case are undisputed. Teamsters Local 513 was a labor union which represented certain employees in the Philadelphia metropolitan area for purposes of collective bargaining. In September 1991, the members of Local 513 voted to merge into another local union, Teamsters Local Union No. 115. The merger became effective in early February 1992. Both of the local unions were unincorporated associations. On June 12, 1978, Silas Littlejohn began working for Local Union No. 513 as an office employee. He left this job in early February 1992.

As an employee of Local 513, Littlejohn was covered by the Teamsters Pension Trust Fund of Philadelphia & Vicinity (the "Pension Fund"), the Plaintiff/Appellee. All participating local unions were required to make contributions to the Pension Fund on behalf of their own employees. In spite of this obligation, Local 513 did not make any contributions to the Pension Fund on Littlejohn's behalf. On December 7, 1992, Littlejohn applied for and was denied a pension by the Pension Fund because it had not received any contributions in his behalf. Littlejohn appealed the Fund's decision. The Fund held a hearing, but

2

did not render a decision on the appeal. Having never received contributions on Littlejohn's behalf, the Pension Fund requested past contributions from Local 115. Local 115 denied liability for Local 513's failure to pay the pension contributions. Local 115 took the position that it had never employed Littlejohn, had no knowledge of Local 513's failure to make the pension contributions, and, therefore, Local 115 should not be liable for the contributions that Local 513 was required to make to the Pension Fund.

Instead of rendering a decision on Littlejohn's appeal, in December 1995, the Pension Fund and the Fund's administrator, William Einhorn, filed a complaint in the United States District Court for the Eastern District of Pennsylvania against Local 115 and Littlejohn. In its complaint, the Pension Fund sought a declaration either that Littlejohn did not participate in the pension plan and, thus, was not eligible for pension benefits, or that Local 115 was responsible for delinquent contributions that should have been paid to the Pension Fund on Littlejohn's behalf by Local 513. The Pension Fund also requested, contingent on a finding that Local 115 was responsible for the delinquent contributions, a determination that Local 115 was liable for interest, attorneys' fees, liquidated damages, and costs.

The parties filed cross-motions for summary judgment. The district court granted the Pension Fund's motion finding that Littlejohn was entitled to pension benefits and that Local 115 was required to pay the contributions to the Pension Fund that were improperly unpaid by Local 513.

II.

The Pension Fund is governed by the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. SS 1001–1461. ERISA covers the Fund because it is a private pension Fund established by both employers engaged in commerce and employee organizations representing employees engaged in commerce. See 29 U.S.C. SS 1002(2)(A)(I), 1003(a)(3). Pursuant to ERISA, a claim like the one in this case--essentially to recover

3

employer contributions owed to an employee pension plan--
must be brought in a federal district court. See 29 U.S.C.
S 1132(e)(1); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54
(1987). Hence, the district court had subject-matter
jurisdiction of the Fund's lawsuit pursuant to 29 U.S.C.
S 1132(e)(1) and 28 U.S.C. S 1331. In light of this
independent basis for federal jurisdiction, the Pension
Fund's invocation of the Declaratory Judgment Act, see 28
U.S.C. S 2201, is proper. See Skelly Oil Co. v. Phillips
Petroleum Co., 339 U.S. 667, 671 (1950); Terra Nova Ins.
Co., Ltd. v. 900 Bar, Inc., 857 F.2d 1213, 1217 n.2 (3d Cir.
1989).

This court has appellate jurisdiction, pursuant to 28
U.S.C. S 1291, because the district court entered final
judgment against Local 115. We exercise plenary review of
the district court's resolution of the parties' cross-motions
for summary judgment. See Fornarotto v. American
Waterworks Co., Inc., 144 F.3d 276, 278 n.3 (3d Cir. 1998).

III.

Local 115 argues that it is not liable for the unpaid
pension contributions because it did not have notice of the
existence of the delinquency at the time that it merged with
Local 513. Local 115 relies primarily on Golden State
Bottling Co., Inc. v. National Labor Rel. Bd., 414 U.S. 68
(1973), which stands for the proposition that a purchaser of
a business, which continues the operations of that
business with notice that the predecessor has committed an
unfair labor practice, is liable for the damages caused by
the unfair labor practice. See also Upholster's Union Pension
Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329
(7th Cir. 1990). The Pension Fund counters that, under
well-settled and long-standing principles of corporate
liability, the surviving entity of a merger is liable for all of
the debts of the predecessor entity regardless of whether
the survivor had pre-merger notice of the debt. See John
Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 550 n.3
(1964); 15 William M. Fletcher et al., Fletcher Cyclopedia of
the Law of Private Corporations S 7121, at 226-27 (rev. ed.
1990).

4

It is well established that ERISA displaces all state law purporting to relate to private pension plans. See McGurl v. Trucking Employees Welfare Fund, 124 F.3d 471, 476 (3d Cir. 1997). The statute, however, does not address many of the issues which arise in the normal course of the administration of such plans. Relevant to this case, it does not set forth principles governing successor liability. In a situation where the statute does not provide explicit instructions, it is well settled that Congress intended that the federal courts would fill in the gaps by developing, in light of reason, experience, and common sense, a federal common law of rights and obligations imposed by the statute. See, e.g., Varity Corp. v. Howe, 516 U.S. 489, 497 (1996); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-11 (1989); Franchise Tax Bd. Of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 10, 24 n.26 (1983).

Of course, the federal common law must be developed with ERISA's policy goals in mind. One of the reasons Congress enacted ERISA was to protect plan participants and their beneficiaries. See 29 U.S.C.S 1001(b) (declaration of policies); see also Matinchek v. John Alden Life Ins. Co., 93 F.3d 96, 99 (3d Cir. 1996). In developing the federal common law, the federal courts have properly looked to state law for guidance. See McGurl, 124 F.3d at 481. Nonetheless, it is important that the federal courts, in formulating the common-law rules, do not strictly adhere to a single state's law at the expense of reason, experience, or common sense, or of furthering the policies of ERISA. Cf. Ream v. Frey, 107 F.3d 147, 154 (3d Cir. 1997) (while state trust law provides source of rules for ERISA, it is no more than a guide or starting point for developing common law rules for welfare plans).

The parties spend much time arguing over the application of several cases which describe the development and construction of corporate successorship in the federal labor law context. Specifically, the United States Supreme Court has considered whether an employer's purchase of a business binds the purchaser to abide by a collective bargaining agreement between a union and the predecessor. See, e.g., Golden State Bottling Co., 414 U.S. at

5

180, 185. In that case, the Court has held that successor liability is broader when the obligation involved is a collective bargaining agreement than it would be when an ordinary debt is involved. Id. at 182–83 n.5. In other cases, the Court has stated that an employer may be bound by the collective bargaining agreement of the predecessor as long as it had notice of the obligation and continued the operations of the predecessor even if the succeeding corporation purchased the assets of the old company and did not actually merge with it. Id. at 180–85; see also Howard Johnson Co., Inc. v. Detroit Local Jt. Exec. Bd., 417 U.S. 249, 257 (1974); Livingston, 376 U.S. at 349–51 (surviving company in merger bound to arbitrate grievance with union under terms of collective bargaining agreement signed by predecessor). Those cases are somewhat distinguishable because they dealt with the application of labor law concepts and the terms of a collective bargaining agreement to a corporation other than the signatory to the agreement. Here, the parties agree that only the transfer of a valid and ordinary debt is at issue which just happens to have its genesis in the terms of a collective bargaining agreement. The issue distinctly is not whether the terms of the collective bargaining agreement signed by Local 513 will be enforced against Local 115.

We agree with the district court and reject Local 115's argument that the surviving entity in a merger must have notice of a predecessor's debt in order to be liable for it. Reason, common sense, and experience––as well as the overwhelming weight of authority––persuade us that we should adopt the general rule that the surviving entity in a merger is liable for the constituents' debts even when the survivor does not have notice of the debt.

Many courts, including this one, have stated that when an obligation imposed by federal labor or environmental law is involved, merger or consolidation automatically operates to transfer the debts of the predecessor to the surviving entity. See, e.g., Aluminum Co. of America v. Beazer East, Inc., 124 F.3d 551, 565 (3d Cir. 1997); Southward v. South Central Ready Mix Supply Corp., 7 F.3d 487, 495 (6th Cir. 1993) (dicta); Artistic Furniture, 920 F.2d at 1325; Anspec Co., Inc. v. Johnson Controls, Inc., 922 F.2d 1240, 1245 (6th

Cir. 1991). In addition, two district courts have considered a question quite similar to the one raised here. Both district courts held that the merger of two local unions, in most circumstances, makes the survivor liable for the constituents' debts. See EEOC v. Local 638, 700 F. Supp. 739 (S.D.N.Y. 1988); Local No. 1, Broadcast Employees v. International Bhd. of Teamsters, 461 F. Supp. 961 (E.D. Pa. 1978), aff 'd in part and rev'd in part on other grounds, 614 F.2d 846 (3d Cir. 1980).

These cases confirm the almost universally accepted state law principle that when two corporations merge, the surviving corporation assumes the liabilities of the extinct corporation. See, e.g., 15 Pa. C.S.A. S 1929(b) (all debts of each corporation "shall be deemed to be transferred to and vested in the surviving or new corporation"); N.J.S.A. S 14A:10-6(e) ("the surviving or new corporation shall be liable for all the obligations and liabilities of each of the corporations so merged"); Del. Code Ann. tit. 8, S 259(a) ("all debts due to any of said constituent corporations ... shall be vested in the corporation surviving"); 15 Fletcher et al. SS 7117, 7121, at 216-18, 226-230 (collecting cases and statutes from numerous states). Local 115 does not contend that its merger agreement with Local 513 provided that it only assumed the debts of which it had notice. Generally, there is no requirement that the surviving entity have pre-merger notice of the predecessor's debts. Indeed, we have found no authority--either in the labor law context or any other for that matter--which stands for the proposition that a surviving corporation must have notice of the predecessor's debts in order to be liable for them. This is especially true when the merger agreement between the locals did not require notice.

The parties do not contend that the local unions, because they are unincorporated associations and not corporations, should not be subject to this general rule. We agree. There is nothing in the record to suggest that the status of the local unions prevented Local 115 from having complete access to the records of Local 513 and, thus, from having an opportunity to ascertain the nature of Local 513's debts. As a practical matter, the affiliation of the two locals with the International brotherhood of Teamsters Union should

7

have facilitated the access of the locals to the payroll, audits and other records of assets and liabilities of each other. Further, we see no reason to believe that the employees of unincorporated associations are deserving of less protection than those of a corporation in this context.

An examination of this general rule demonstrates not only its basis in reason but also that adopting it in this context will further ERISA's policy goal of protecting employee pension plan participants and their beneficiaries. See 29 U.S.C. S 1001(a). First, the two merging entities either do have, or can assure that they have, access to all the information necessary to determine the precise nature and number of liabilities of the predecessor entity. This is especially true in a case like this where the existence of the debt is so readily discoverable. In contrast, the participants and beneficiaries may have no reason to know that the contributions have not been made or that the surviving entity does not have notice of the debt. Thus, it is appropriate to put the burden of ascertaining the liabilities of merged entities on the surviving entity rather than on its employees. This will further ERISA's goal of protecting participants and beneficiaries in pension plans as the burden is on the employer to assure itself that it is not delinquent. Second, requiring notice to the surviving entity before a debt follows a merger would result in perverse incentives, encouraging the survivor to not examine records and hide its head in the sand for fear of receiving notice of an obligation. We are loathe to create such incentives. Third, requiring notice as a condition for payment would allow a disappearing constituent to unilaterally extinguish a debt--which it may have voluntarily assumed--simply by hiding it from the surviving entity before the merger. See Howard Johnson Co., 417 U.S. at 257. Introducing such uncertainty into this area could severely undermine ERISA's goals.

Local 115 is in a particularly unsympathetic position in this case. There is no dispute that Local 115 actually merged with Local 513. The parties agree that this was not an asset sale or something short of full fusion of the two entities. Moreover, even if Local 115 did not realize that Local 513 had not funded Littlejohn's pension, this is not

8

such an unusual liability that it could not have foreseen its existence. In short, any reasonable entity would have been on notice to examine Local 513's records for this type of obligation, especially in light of Local 115's similar commitment to make contributions for its employees to the Pension Fund. There is no contention that Local 115 had anything less than full access to all of Local 513's payroll and pension records. Indeed, this was not a consolidation of two stranger corporations with little knowledge of each others' operations, but a merger of two sister locals, both of which operated in a similar manner and which were offspring of the International Brotherhood of Teamsters.

IV.

In sum, we hold that when two unincorporated local unions merge, the survivor assumes the liabilities of the extinct constituent even if it does not have pre-merger notice of the debt. For the foregoing reasons, the district court's January 10, 1997 judgment will be affirmed. Costs taxed against Teamsters Local Union 115.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9