NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 13-4141

———————————

PAULA M. CAMPBELL,

Appellant

v.

SUSSEX COUNTY FEDERAL CREDIT UNION,
an employee welfare benefit plan, and Plan Administrator


———————————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-10-cv-00710)
District Judge: Honorable Richard G. Andrews

———————————

Argued October 21, 2014

Before: AMBRO, FUENTES, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed:  February 19, 2015)

Shannon L. Brainard, Esquire
Richard R. Wier, Jr., Esquire   (Argued)
Marshall, Dennehey, Warner, Coleman & Goggin
1220 North Market Street
P.O. Box 8888, 5th Floor
Wilmington, DE  19801

        Counsel for Appellant

Michael A. Graziano, Esquire   (Argued)
F. Joseph Nealon, Esquire

Eckert, Seamans, Cherin & Mellott
1717 Pennsylvania Avenue, N.W., 12th Floor
Washington, DC   20006

Brya M. Keilson, Esquire
Gellert Scali Busenkell & Brown
913 North Market Street, 10th Floor
Wilmington, DE   19801

     Counsel for Appellee

---

OPINION[*]

---

AMBRO, Circuit Judge

Paula Campbell appeals from a judgment dismissing her claim against her former employer, Sussex County Federal Credit Union ("Sussex"), under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The District Court granted summary judgment for Sussex after concluding Campbell's top-hat plan[1] is unenforceable for lack of consideration. Because Campbell has raised a triable issue of fact on this issue, we reverse and remand.

I.     **FACTS AND PROCEDURAL HISTORY**

Campbell began working for Diamond State in 1983 and was promoted to the position of "Manager/President" in 1998. She engaged a lawyer in 2005 to draft a

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] "A top hat plan is a 'plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees.'" *Miller v. Eichleay Eng'rs, Inc.*, 886 F.2d 30, 34 (3d Cir. 1989) (quoting 29 U.S.C. §§ 1051(2), 1081(a), 1101(a)(1)).

2

supplemental retirement-benefits plan on her behalf (the "Plan" or the "Campbell Plan"). The Plan, whose stated "purpose . . . [was] to reward [Campbell] for her loyal and continuous service to the Company," required Diamond State or its successor to provide lifetime health-insurance benefits to Campbell and her husband at its "sole cost and expense" upon Campbell's retirement from the Company. When Diamond State's board of directors approved the Plan in December 2005, Campbell had no imminent retirement plans. Still, she believed she could avail herself of the Plan's benefits even if she "retired the next day."

In the fall of 2007, Campbell resigned from Diamond State to accept a position at Sussex. In addition to her salary, Sussex provided Campbell—as it did all of its active, full-time employees—with a cafeteria benefits plan allowing her to allot a fixed monthly allowance of $450[2] toward: (1) paying health-insurance premiums, (2) funding a flexible spending account, (3) funding a 401K plan, and/or (4) receiving additional compensation. Because Campbell and her husband's premiums were now covered by Diamond State, she had no reason to allocate any portion of this allowance toward health insurance. Instead, she allocated $50 of her 2009 allowance to her flexible spending account and $400 to compensation, which she did in fact receive through April 2009.

In November 2008, Sussex and Diamond State entered into a merger agreement under which Sussex assumed all liabilities of Diamond State on March 31, 2009. Campbell claims that Sussex's CEO, Pamela Fleuette, "agreed . . . [both] prior to and after the merger . . . that th[e Plan] would absolutely be honored" by Sussex as long as Campbell no longer received additional compensation under Sussex's cafeteria plan. Fleuette denies promising Campbell that Sussex would honor the Plan indefinitely but acknowledges telling Campbell that Sussex

---

[2] The amount of the fixed monthly allowance differed by year; in 2009 it was $450.

3

would pay for the portion of her and her husband's premium not covered by her monthly allowance through the end of 2009. After enrolling in Sussex's group Blue Cross Blue Shield (BCBS) plan, Campbell no longer received her prior monthly allowance.

On October 7, Sussex fired Campbell alleging performance reasons. Ten days later it sent Campbell a letter, signed "John W. Lewis, President," stating that if she wished to continue her Sussex health coverage under the Consolidated Omnibus Budget Reconciliation Act (COBRA), she was required to return her COBRA election and monthly premium. On October 31, Campbell wrote back to Lewis "to confirm [Sussex's] intentions regarding [her] Retirement Plan contract" with Diamond State and to notify him that legal counsel had advised her that Sussex was obligated to honor the Plan as the successor to Diamond State.

Sussex's outside counsel, Eric Howard, replied on Lewis's behalf on November 6, stating that "[t]o the extent [Campbell] want[ed] a blanket statement that Sussex . . . w[ould] honor any and all obligations of Diamond State arising under [the Plan] and then let [her] fill in the blanks as to what [she] think[s] they are, [he] w[ould] not do that." Campbell replied on November 10 to "clarify" her contention that the Plan required Sussex to provide "health insurance coverage for [herself] and her husband for the rest of [her] life, at its sole expense."

On November 16, Howard sent Campbell another letter. He wrote that "[w]hile [she] again fail[ed] explicitly to state what it is [she] contend[ed] Sussex . . . [was] obligated to do," "to the extent [she was] requesting . . . reimburse[ment] for [her] health insurance premiums, [Sussex] w[ould] not do that." When negotiations stalled, Campbell's lawyer sent Howard "a written request for benefits" asking that he "advise that this request complie[d] with the requirement [of ¶ 3(a) of the Plan] that the request go to the President of the Company." Despite subsequent letters and phone calls, no further response from Howard or

4

any other Sussex representative was sent to Campbell or her lawyer.

Campbell filed suit against Sussex alleging violations of ERISA and various state common-law claims in the U.S. District Court for the District of Delaware in August 2010. After the District Court dismissed all but Campbell's non-fiduciary ERISA claim,[3] Sussex moved for summary judgment, arguing (1) the Plan is unenforceable because it lacked consideration, (2) Campbell failed to exhaust her administrative remedies before filing suit, and (3) the Plan does not require Sussex to cover Campbell or her husband's health-insurance premiums. In September 2013, the District Court granted summary judgment on the first ground, mooting Sussex's remaining arguments. This appeal followed.

## II.    LEGAL STANDARD

We have plenary review over the District Court's grant of summary judgment. *See Atkinson v. LaFayette College*, 460 F.3d 447, 451 (3d Cir. 2006). Summary judgment should be granted only if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any contested facts will be resolved in the nonmoving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## III.    ANALYSIS

### A.    Consideration

In granting Sussex's motion for summary judgment, the District Court ruled that the Plan is unenforceable for lack of consideration because Campbell "was not required to work for any additional period of time . . . after the Plan was adopted," and

---

[3] Campbell does not appeal this dismissal order. Nor does she appeal the District Court's denial of her cross-motion for summary judgment.

5

"Campbell's past performance as an employee [of] Diamond State could not have served as consideration to support the formation of a contract." Campbell argues on appeal that the District Court "came to the wrong conclusion that the Plan's [only] purpose was to reward [her] for her past performance."

The latter argument is more persuasive. Even if Campbell could have retired immediately and still received health-insurance benefits, she did not indicate any present intent to do so at the time of the Plan's adoption. Further, Diamond State presumably could have denied Campbell coverage had it fired her before she left the Company. Because a reasonable trier of fact could find that the consideration for the Plan took the form of Campbell's "continuous services and loyalty" up until her actual date of retirement, *see, e.g.*, *Williams v. Wright*, 927 F.2d 1540, 1551 (11th Cir. 1991), the District Court erred in granting Sussex summary judgment on this ground.

**B.      Sussex's Alternative Arguments for Affirmance**

Sussex makes four alternative arguments for affirmance. As we may affirm the District Court's decision "on any ground supported by the record," *Anderson*, 477 U.S. at 255, we consider each of these arguments in turn.

*1.      Exhaustion of Administrative Remedies*

First, Sussex asserts that Campbell failed to exhaust her administrative remedies because neither Campbell nor her lawyer's letters were sent directly to Sussex's President as required by ¶ 3(a) of the Plan, and Campbell never appealed any initial denial of benefits to Sussex's Secretary as required by ¶ 3(c). Neither argument is persuasive.

With respect to Campbell's failure to address her letter directly to Sussex's

6

President, Sussex failed to preserve this issue by raising it for the first time in its reply brief in the District Court.[4] *See* Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."). Moreover, Sussex only raised the matter after repeatedly asserting in its motion papers that it did not "dispute the sufficiency of the October 31, 2009 letter . . . to satisfy [Campbell's] alleged obligation with regard to paragraph 3(a) of the Diamond State Plan."

Sussex's argument that Campbell should have appealed any initial denial of benefits to Sussex's Secretary also fails to carry the day. Under Department of Labor regulations, when a plan administrator "fail[s] . . . to establish or follow claims procedures" in denying a claim for benefits, the "claimant shall be deemed to have exhausted the administrative remedies under the plan." 29 C.F.R. § 2560.503(*l*). Regardless which letter qualified as Campbell's initial claim for benefits, Sussex never complied with ¶ 3(b) of the Plan because it failed to advise Campbell of, among other things, (1) "the specific reason or reasons for [its] denial [of a claim]," (2) "the specific reference to pertinent provisions of th[e Plan] on which such denial is based," (3) "appropriate information as to the steps to be taken . . . to submit the claim for review," and (4) "the time limits for requesting a review." Thus, Campbell was not required to exhaust any additional administrative remedies before bringing suit.

### 2.    *Statute of Limitations*

---

[4] Although waiver is not an issue addressed by the parties, it is "beyond cavil that we may . . . raise the issue of waiver *sua sponte*." *United States v. Gimbel*, 782 F.2d 89, 92 n.5 (7th Cir. 1986).

7

Second, Sussex argues that Campbell's ERISA claim is time-barred and that the District Court erroneously applied the doctrine of equitable tolling to conclude otherwise. Other courts of appeals, however, have applied equitable tolling to situations like here where a plan administrator has failed to comply with regulatory notice requirements in denying a plan participant's claim for benefits. *See, e.g.*, *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 680 (1st Cir. 2011) (concluding that the plaintiff was entitled to equitable tolling because the defendant failed "to provide [the plaintiff] with notice of his right to bring suit under ERISA, and the time frame for doing so, when it denied his request for benefits"); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("[F]ailure to comply with the regulatory obligation to disclose the existence of a cause of action to the plan participant whose benefits have been denied is the type of concealment that entitles [the] plaintiff to equitable tolling of the statute of limitations."). Hence the District Court did not abuse its discretion in equitably tolling Campbell's ERISA claim.

### 3. Successor Liability

Sussex next asserts that it did not assume liability for the Campbell Plan when it merged with Diamond State. Although Sussex acknowledges that a surviving corporation in a merger ordinarily assumes all debts and liabilities under existing pension plans regardless of pre-merger notice, *see Teamsters Pension Trust Fund of Phila. & Vicinity v. Littlejohn*, 155 F.3d 206 (3d Cir. 1998), it contends that "the balance of equities weighs against imposing successor liability on Sussex for the Campbell Plan."

Even if our precedent allows for such an equitable defense to successor liability,

8

"[d]etermining equities in the first instance is a seldom fit grist for the appellate mill." *In the Matter of Quenzer*, 19 F.3d 163, 165 (5th Cir. 1993). It would be particularly inappropriate to do so in this case because Sussex never moved for summary judgment in the District Court on this ground.

### 4.     Compliance with Contractual Obligations

Finally, Sussex argues that it is not required to pay for Campbell's health insurance because its current BCBS plan bars coverage for all but full-time employees. It points to ¶ 1(a) of the Plan, which states that "[i]n the event the Company should change its health plan in the future, it shall provide coverage at least equivalent to the coverage *currently in effect* for [Campbell] under its new plan." (emphasis added). Campbell responds that ¶ 1(a) requires Sussex to provide coverage to what was "currently in effect" for Diamond State employees as of the Plan's adoption date, not what exists for Sussex employees as of today's date. Construing the Plan as a whole, we conclude that Campbell's reading of the Plan language—Diamond State was required to provide coverage at least equivalent to what she enjoyed at the time of her Plan's adoption—is equally plausible (if not more reasonable) than Sussex's interpretation.

We also reject Sussex's contention that reference to a prior retirement plan of Diamond State and its former manager Eva Thomas conclusively resolves this ambiguity. While Sussex contends that a comparison of the two plans' language supports its position, these minor wording differences do not allow us to draw any definitive conclusions about Diamond State's intent to provide Campbell and Thomas with different coverage. Indeed, other extrinsic evidence in the record supports the opposite

9

conclusion. *See* J.A. 330 (noting that at its December 23, 2005 meeting, the Diamond State board voted "to have the same benefits extended to [Campbell] that ha[d] been extended to [Thomas]").

Because a factfinder must weigh this conflicting evidence at trial, we decline to use this alternative ground to affirm the District Court's judgment.

\* \* \* \* \*

For the above reasons, we reverse the District Court's entry of summary judgment and remand for further proceedings consistent with this opinion.