PUBLISH

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

--------------------------------------------

## No. 97-2116

--------------------------------------------

D. C. Docket Nos. 90-CV-30209 LAC
90-CV-30210 LAC

FRANCES W. HORTON,

Plaintiff-Appellee-
Cross-Appellant,

versus

RELIANCE STANDARD LIFE INSURANCE COMPANY,
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,

Defendants-Appellants-
Cross-Appellees,

--------------------------------------------------------------------------------------------------------------------------------

FRANCES W. HORTON.

Plaintiff-Appellee-
Cross-Appellant,

versus

PROVIDENT LIFE AND ACCIDENT INSURANCE
COMPANY,

Defendant-Appellant-
Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Florida
(May 20, 1998)

Before EDMONDSON and BIRCH, Circuit Judges, and FAY, Senior Circuit Judge.

PER CURIAM:

This appeal involves the Employee Retirement Income Security Act (ERISA). Defendants-Appellants appeal from the district court's judgment in favor of plaintiff-appellee, declaring that plaintiff is entitled to receive benefits under two insurance policies indemnifying the life of her husband. We chiefly conclude that, when the evidence is inconclusive as to whether the deceased died by accidental or intentional means,

use of the legal presumptions against suicide and in favor of accidental death are appropriate. These presumptions are properly part of the pertinent federal common law; and we affirm.[1]

## I.

These consolidated cases involve benefit claims arising out of an in-flight fire and airplane crash that killed Jacob Horton and two pilots. Jacob Horton was insured through his employer by a Reliance Standard Life Insurance Company accidental

---

[1] Because we affirm, plaintiff's cross-appeal about the district court's exclusion of certain evidence is moot.

death policy and a Provident Life & Accident Insurance Company business travel accident policy. Plaintiff Frances Horton, widow of Jacob Horton, sued Reliance and Provident to recover benefits from the two policies in the amounts of $300,376 and $300,000 respectively. Defendants-Appellants dispute that Mr. Horton's death was accidental and deny their obligation to provide benefits to Mrs. Horton.

## II.

We review findings of fact made by the district court for clear error, *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985), and conclusions of law *de novo*, *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).

## A. The Insurance Policies at Issue.

Mrs. Horton's claim against the defendant insurance companies is brought under Section 1132 (a)(1)(B) of ERISA. This section allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C.A. § 1132(a)(1)(B). A plaintiff suing under this provision bears the burden of proving his entitlement to contractual benefits. See Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992). But, if the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage. Farley, 979 F.2d at 658.

Though the coverage provisions of the two policies are worded differently, in substance they are identical. The

6

Provident policy covers any "injury" sustained while Mr. Horton was on company business. The policy defines "injury" as an "[a]ccidental bodily injury which: (i) is direct and independent of any other cause ...." The Reliance policy also requires Mr. Horton to be on company business and pays benefits for any loss "resulting directly and independently of all other causes from bodily injury caused by accident occurring while this Policy is in force." Both policies contain exclusions for suicide.

Mr. Horton's death will come within the terms of the insurance policies unless (1) he was not engaged in the business of his employer at the time of the crash; or (2) the crash was

not accidental. The parties contest both of these issues;[2] but the latter issue is the focus of this opinion.

## B.   Whether the Legal Presumptions Were Applicable.

Defendants argue that the district court erred when it used legal presumptions to decide the case.[3] The district court stated

---

[2]We conclude that the district court's finding that Mr. Horton was on company business at the time of the incident is not clearly erroneous and does not warrant further discussion.

[3]Because the district court concluded that the evidence did not favor one theory over the other, it decided that the presumptions were outcome-determinative.

For the sake of discussion only, we assume -- as the insurance companies encourage us to do -- that plaintiff had the burden of persuasion.

that these kinds of presumptions could be incorporated into ERISA as federal common law; and we agree.

Although it is a "comprehensive and reticulated statute," Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980), ERISA's text is silent on these presumptions. Courts have the authority "to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." Kane v. Aetna Life Ins., 893 F.2d 1283, 1285 (11th Cir. 1990). When crafting a body of common law, federal courts may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes.

To decide whether a particular rule should become part of ERISA's common law, courts must examine whether the rule, if adopted, would further ERISA's scheme and goals. Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir. 1986). ERISA

9

has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans, id.; and (2) uniformity in the administration of employee benefit plans, Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562, 570-71 (11th Cir. 1994).

Both the negative presumption against suicide and the affirmative presumption of accidental death further ERISA's goals. The presumptions provide courts and juries with uniform rules to resolve coverage questions where the evidence of how the insured died is inconclusive. The presumptions favor the protection of the interests of beneficiaries over those of insurance companies, but this bias is not arbitrary: it is

grounded in tested observations of human behavior and in American legal history.

A majority of states recognizes the presumptions against suicide and in favor of accidental death but treat them as rebuttable. *See* 31A C.J.S. *Evidence* §183, at 362-65 (1996); Couch on Insurance, §138:66 (3d ed. 1997). When Congress enacted ERISA, it was not writing on a clean slate. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988). "Congress is understood to legislate against a background of common-law adjudicatory principles. . . . Thus, where a common-law principle is well established . . . the courts may take it as given that

11

Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991) (internal quotation omitted). Common law has existed in the United States and England for hundreds of years, and part of that law is that suicide will not be presumed. See 31A C.J.S. *Evidence* §183, at 362-65; Couch on Insurance, §138:66.

This presumption was important because suicide was viewed as "a species of crime or wickedness – something wrong; a kind of self murder." Life Ass'n of America v. Waller, 57 Ga. 533, 536 (1876). One earthly reason that an unexplained death was

historically not counted as a suicide was the law's harsh impact on the deceased's family and heirs, that is, the innocent. Suicide, a "felo de se," was a felony at common law, punishable by forfeiture of the goods and chattels of the offender. Stiles v. Clifton Springs Sanitarium Co., 74 F. Supp. 907, 909 (W.D.N.Y. 1947); 83 C.J.S. Suicide §§1-2 (1953). We are not persuaded that Congress, by enacting ERISA, meant to change the established, basic presumptions on the subject of accidental death. It still makes sense not to deprive innocent heirs (here Mrs. Horton) without sufficient evidence of suicide.

The presumptions never drop out of the case until the fact-finder becomes convinced, given all the evidence, that it is more likely than not that Mr. Horton committed suicide. Defendants' evidence about suicide was not so strong that every reasonable fact-finder would have had to find the death to be a suicide. And, the trial judge – the fact-finder in this case – was not persuaded by defendants' evidence: "All of the speculation about the arson/suicide theory is just that, speculation. Much of the evidence supporting this theory is incredible. All of it, credible or not, yields no conclusive answer." Therefore, the district

court's finding of ultimate fact that Mr. Horton's death was accidental must be affirmed.

AFFIRMED.