**Karla SCHIKORE, Plaintiff–Appellee–Cross–Appellant,**

v.

**BANKAMERICA SUPPLEMENTAL RETIREMENT PLAN, Defendant–Appellant–Cross–Appellee.**

**Nos. 99–16952, 99–17017.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 2001

Filed Oct. 16, 2001

---

**36.** 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977).

**37.** *Id.* at 877, 97 S.Ct. 2150.

**38.** *Id.* at 879.

Margaret M. Farley, Farley Law Offices, San Rafael, California, for the defendant-appellant-cross-appellee.

Paul V. Simpson, Leigh Ann Alderman, Simpson, Garrity & Innes, San Francisco, California, for the plaintiff–appellee-cross-appellant.

Before: REINHARDT, TASHIMA, and BERZON, Circuit Judges.

Opinion by Judge REINHARDT; Dissent by Judge TASHIMA

REINHARDT, Circuit Judge:

Plaintiff Karla Schikore, a 20–year employee of Bank of America, NT & SA, seeks lump-sum disbursement of retirement benefits she has accrued as a participant in the BankAmerica Supplemental Retirement Plan, an employee benefits plan covered under the ERISA statute. The defendant Plan denied Schikore's request on the ground that she failed properly to follow the Plan's payment election procedure. Specifically, the Plan contends that Schikore failed to submit the requisite benefit payment election form one year in advance of her request for lump-sum disbursement, as mandated by the Plan's rules, and that it has no record of having received the form. Schikore asserts that she mailed the form well in advance of the deadline, that she submitted evidence of such a mailing, and that the common law mailbox rule, under which receipt is presumed upon proof of mailing, should apply. Whether the federal and state common law mailbox rule applies to an ERISA plan's benefit decisions is a question of first im-

pression in this Circuit. As Schikore was appealing a denial of benefits under her retirement plan, the district court had jurisdiction under 29 U.S.C. § 1132(a)(1)(B). The district court's order remanding to the Plan Administrator constitutes an appealable final order, over which we have jurisdiction pursuant to 28 U.S.C. § 1291 (stating that courts of appeals have jurisdiction solely over appeals from "final decisions of the district courts of the United States").[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Schikore was employed by Bank of America, NT & SA ("Bank") from 1978 to March 31, 1998, when she voluntarily terminated her employment. The Bank is a subsidiary of BankAmerica Corporation ("Corporation"), which established the BankAmerica Supplemental Retirement Plan ("Plan") for its employees and employees of its subsidiaries and affiliates. The rules of the Plan are contained in the summary description document ("Plan Description"). During Schikore's employment with the Bank, she participated in several retirement plans offered by the Corporation; the one at issue here is an unfunded retirement benefits plan intended to provide supplementary benefits for certain management and highly compensated employees of various subsidiaries and affiliates of the Corporation. As an unfunded plan, the Plan is not required to segregate the funds to be used to pay benefits. The plan administrator for purposes of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(16)(A), is the BankAmerica Corporation Employee Benefits Administrative Committee ("Plan Administrator"), which consists of senior officers of participating Corporation subsidiaries and affiliates. The Plan Administrator has discretionary authority under the Plan to determine eligibility for benefits and to construe the terms of the Plan.

The Plan rules, contained in the Plan Description, provide that an employee with at least $10,000 in her account who wishes lump-sum disbursement of benefits following termination of employment must submit a benefit payment election form to the BankAmerica Retirement Plans Service Center ("Service Center") at least one year prior to the termination date. The daily administration of the Service Center is handled by a third-party administrator, Kwasha Lipton ("Third–Party Administrator"), but overseen by the Plan Administrator. If employment is terminated before the one-year anniversary of the filing of the election form, the request for lump-sum disbursement is not honored and benefits are instead paid in five annual installments beginning in the calendar year after the employee reaches 65 years of age.

Schikore, who is 51 years old, stated that she completed the election form in December 1996 and mailed it to the Service Center, retaining a copy for her records. In March 1998, prior to terminating her employment with the Bank, Schikore applied for lump-sum disbursement of her benefits. Schikore was informed by the Plan that she did not have an election form on file at the Service Center. Immediately upon learning this, Schikore faxed a copy

---

**1.** The district court's order remanding to the Plan Administrator is an appealable final order under *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust*, 258 F.3d 986 (9th Cir.2001): (1) The district court below conclusively decided a separable legal issue, namely that of whether the common law mailbox rule should apply; (2) the district court asked the Plan, upon remand, to apply a rule, which, if erroneous, would have resulted in a wasted proceeding; (3) there was no other way for the Plan or Schikore practically to challenge the remand order or the application of the rule. *Id.* at 993.

of the completed form to the Service Center. The Plan nevertheless denied Schikore's request for lump-sum disbursement on the basis that it did not have her election form on file one year prior to her March, 1998 request.

Schikore appealed the Plan's decision to the Plan Administrator, asserting that the common law mailbox rule creates a presumption of receipt which the Plan had failed to rebut. The Plan Administrator denied Schikore's appeal on the grounds that (1) because ERISA preempts common law rules, the mailbox rule is inapplicable to employee benefit plans, (2) even if the mailbox rule would otherwise apply, the Plan rules, as a matter of contract, expressly require actual receipt as opposed to mere mailing of the document, and (3) the Plan rules do not permit lump-sum disbursement because the Service Center did not have her election form on file one year prior to her March 1998 request.

Schikore filed suit under § 502(a)(1)(B) of ERISA, which permits a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The district court granted summary judgment in favor of Schikore, concluding that the Plan Administrator abused its discretion by refusing to apply the common law presumption of receipt. The court remanded for the Plan Administrator to determine whether Schikore had presented sufficient evidence of mailing to invoke a presumption of receipt and, if so, whether the Plan had sufficiently rebutted that presumption by contrary evidence of non-receipt. The Plan filed a timely notice of appeal. Schikore cross-appealed on the issue of remand to the Plan Administrator and on the district court's denial of attorney's fees. Both parties argue that a remand to the Plan Administrator is neither necessary nor desirable.

## STANDARD OF REVIEW

In an ERISA case, we review the district court's determinations de novo. *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1109 (9th Cir.1999). Where the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we ordinarily review the plan administrator's decisions for an abuse of discretion. *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1204 (9th Cir.2000); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

The abuse of discretion standard requires reversal of the findings of the Plan Administrator if they are found to be arbitrary and capricious. We have held that plan administrators abuse their discretion when they "render decisions without any explanation, or construe provisions of the plan in a way that conflicts with the plain language of the plan." *Eley v. Boeing Co.*, 945 F.2d 276, 279 (9th Cir.1991) (internal quotations omitted). Similarly we have held that an abuse of discretion occurs when a plan administrator fails to develop facts necessary to make its determination, *Taft*, 9 F.3d at 1473. As a more general matter, an error of law constitutes an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law....."); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir.1997) ("A district court abuses its discretion if it fails to apply the correct law....."). The abuse of discretion rule is

equally applicable in the case of errors of law made by plan administrators.

■ Additionally, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire and Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948 (quoting *Restatement (Second) of Trusts* § 187, Comment d (1959)).[2] The district court, citing *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 553 (9th Cir.1995), found that a less deferential standard of review was appropriate because a conflict of interest existed. Schikore urges us to apply that lesser standard here. *See id.* (applying less deferential standard of review where potential conflict of interest exists). We need not decide which standard of review is applicable because even under the more deferential traditional standard, we conclude that the plan administrator's decision must be vacated.

## DISCUSSION

The Plan's determination was arbitrary and capricious and it abused its discretion in (1) finding that ERISA preempted the common law mailbox rule, (2) finding that the rule was one of construction and therefore inapplicable to the Plan's requirement of actual receipt, and (3) failing to adequately develop the factual record before denying Schikore's claim of eligibility for benefits.

## I. The Application of the Common Law Mailbox Rule to Schikore's Eligibility Determination

■ The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time. It is a settled feature of the federal common law. *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884); *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir.1998). As a rebuttable presumption, it does not operate as a rule of construction, dictating that a requirement of receipt should be read as a requirement of timely mailing. Rather, it is a tool for determining, in the face of inconclusive evidence, whether or not receipt has actually been accomplished. Therefore, the application of the rule is not contrary to the Plan's requirement of "actual receipt," as the Plan contends. Rather it helps establish whether actual receipt occurred. The Plan Document contains no terms or provisions addressing how it is to be determined whether a required form was received. For the reasons enumerated below, we hold that in such circumstance it was an abuse of discretion for the Plan to fail to apply the long-established common-law rebuttable presumption that a letter mailed is received, developed precisely to aid finders of fact in circumstances where direct evidence of either

2. We note that the employer responsible for funding Schikore's benefits (the Bank) is a BankAmerica Corporation subsidiary, and the Plan Administrator responsible for determining Schikore's eligibility for benefits (the Committee) consists of employees of the Bank and other Corporation subsidiaries and affiliates. We also note that, as an unfunded plan, the Plan is not required to segregate the funds used to pay benefits, and that BankAmerica, as a financial services corporation borrows, invests, and lends money based on the size of the pool of available assets. Under these circumstances, a motive may exist for the plan administrator to deny for illegitimate reasons a claimant's request for lump-sum disbursement, in order that the Corporation might make use of such funds in the period before the claimant turns 65.

receipt or non-receipt is, as here, not available.[3]

 The common law mailbox rule is consistent with the purposes of ERISA and applies to ERISA plans where receipt is a factual issue in dispute.[4] As the district court noted, federal common law is applicable when evaluating claims for benefits unless that common law is inconsistent with ERISA's objectives. "In enacting ERISA, Congress painted with a broad brush, expecting the federal courts to develop a 'federal common law of rights and obligations' interpreting ERISA's fiduciary standards." *Bins v. Exxon Co. U.S.A.,* 220 F.3d 1042, 1047 (9th Cir.2000) (en banc) (quoting *Varity Corp. v. Howe,* 516

U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)).[5] In formulating the federal common law applicable to ERISA, courts are to be "governed by the federal policies at issue." *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 (9th Cir. 1984). The purpose of ERISA is to protect the rights of employees in their benefit plans. 29 U.S.C. § 1001(b) (congressional findings and declaration of ERISA policy). Thus, for example, this Court has held that there is a common law right of rescission under ERISA for an insurance contract entered into under a false representation of health. *Sec. Life Ins. Co. of Am. v. Meyling,* 146 F.3d 1184, 1191 (9th Cir.1998).[6] Particularly relevant to the in-

3. Our determination that the common law evidentiary "mailbox" rule applies to the Plan is not inconsistent with our decision that a Plan Administrator need not apply a common-law *definition* of a Plan's term that differs from the definition that is used by the Internal Revenue Service (IRS) and favored by the Plan Administrator. *See Hensley,* 258 F.3d at 989. In *Hensley,* the Plan Administrator, in its discretion, defined the term "employee" to mean "W–2 employees" as this was the employer's intent when designing the plan. The Administrator's definition corresponded with the definition of "employee" for tax purposes that the Internal Revenue Service communicated to the employer in a private letter ruling. *Id.* at 1001–2. The district court, however, determined that the common-law definition of "employee" should apply because the term was not defined in the Plan, and that the Plan Administrator had abused its discretion in construing the term differently. We reversed, holding that "plan administrators should be given the full benefit of the discretion afforded to them by their respective plans in interpreting plan terms, be they defined or undefined, with the reasonableness of those interpretations being evaluated against the relevant factual and legal backgrounds." *Id.* at 1001. In Schikore's case, it is not the interpretation of a Plan term that is at issue, but, rather, whether an evidentiary rule of federal common law is applicable in the absence of a provision in a plan rejecting that rule. We hold that the federal common law rule applies in such circumstance.

4. When denying Schikore's appeal, the Plan found that the mailbox rule, as a common law rule, was preempted by ERISA. The Plan, it seems, has since abandoned this preemption contention. We must nonetheless consider the source of the governing law in order to determine whether the mailbox rule applies to ERISA plans.

5. *See also, e.g., Sec. Life Ins. Co. of Am. v. Meyling,* 146 F.3d 1184, 1191 (9th Cir.1998) ("Under ERISA, Congress has authorized the courts 'to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in [the Act].'") (quoting *Peterson v. Am. Life & Health Ins. Co.,* 48 F.3d 404, 411 (9th Cir. 1995)) (alteration in original); *Richardson v. Pension Plan of Bethlehem Steel Corp.,* 112 F.3d 982, 985 (9th Cir.1997) ("ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. Rather, Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws.") (citation omitted).

6. This is the approach followed in other Circuits as well. *See Manning v. Hayes,* 212 F.3d 866, 870–74 (5th Cir.2000) (holding that federal common law applies to disputes between a non-beneficiary claimant and the named ERISA beneficiary to life insurance proceeds), *cert. denied,* ── U.S. ──, 121 S.Ct. 1401,

stant case is *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038 (11th Cir. 1998). There, the Eleventh Circuit held that federal common law presumptions against suicide and in favor of accidental death applied to ERISA benefit claims. *Id.* at 1040. The court concluded that the presumptions against suicide and in favor of accidental death further ERISA's goals by "provid[ing] courts and juries with uniform rules to resolve coverage questions where the evidence of how the insured died is inconclusive." *Id.*

In the instant case, there is a critical evidentiary question: specifically, who bears the ultimate burden of establishing receipt when receipt is disputed and the evidence is inconclusive. We note that the Plan requires only actual receipt and does not require any particular form of mailing. In the absence of the use of registered or certified mail, on the one hand, and "[a] returned envelope or other indication of failed delivery," on the other, both receipt and non-receipt are "difficult to prove conclusively." *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995). This case exemplifies the reason for the common law's application of the mailbox rule. The evidence is inconclusive: Schikore claims that she mailed the form, and the Plan claims that the form is not contained in its files. As the district court reasoned, the presumption of receipt established by the mailbox rule applied "precisely to avoid the type of swearing contest in which the parties are presently involved." In the absence of such a rule, plan participants could easily be disadvantaged and their rights made wholly dependent on the choice that plan administrators would be forced to make between

unproved assertions by the participant and similarly unproved assertions by the plan they administer. Permitting such arbitrary decisionmaking would be directly contrary to the purpose of ERISA to "protect the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b) (congressional findings and declaration of ERISA policy). Application of the common law mailbox rule, which allows a plan to rebut an unfounded claim *by adequate evidence*, avoids such arbitrariness and is therefore consistent with ERISA's policies and purpose. It was an abuse of discretion for the Plan Administrator to conclude that the rule was inapplicable in this case.

We have never previously considered the question of precisely how the common law mailbox rule should be applied to an ERISA plan's benefit decisions. The answer is not difficult. Like the application of all common law rules, the application of the mailbox rule to an ERISA plan's benefit decisions must be done in a manner consistent with the purposes of ERISA, the central purpose of which is to "protect the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b) (congressional findings and declaration of policy). *See also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Because the common law mailbox rule operates as a rebuttable presumption, the factfinder must determine whether Schikore has presented sufficient evidence of mailing to invoke the presumption of receipt and, if so, whether the Plan has presented sufficient evidence of non-receipt to rebut the presumption.

149 L.Ed.2d 345 (2001); *McDaniel v. Med. Life Ins. Co.*, 195 F.3d 999, 1001 (8th Cir. 1999) ("As no particular ERISA section governs the effect of incontestability clauses, we are obliged to look to federal common law in

our consideration of this case."); *Teamsters Pension Trust Fund v. Littlejohn*, 155 F.3d 206, 208–09 (3d Cir.1998) (looking to federal common law to determine corporate successor liability for an ERISA claim).

Schikore has presented, as evidence of mailing, a sworn declaration that she mailed the benefit payment election form to the Service Center in December 1996. We have held a sworn statement is credible evidence of mailing for purposes of the mailbox rule. *Lewis v. United States,* 144 F.3d 1220, 1223 (9th Cir.1998).

The Plan relied in its factual determination of non-receipt only on the fact that the form is not presently contained in its records. Permitting a retirement plan to find non-receipt simply on the basis that the records office now cannot find the document, although there is evidence of mailing, is inconsistent with ERISA's purpose to protect employee rights.[7] Employees are often asked to make crucial determinations about the management and disbursement of their retirement benefits by submitting certain documents (e.g., payment election forms) to their retirement plans. In a large number of cases, submission will occur by mail. The function of the mailbox rule in this context is to provide employees with a guarantee that, if the retirement plan

claims not to have received a document that an employee mailed, the document will nevertheless be presumed to have been received by the plan unless the plan can produce probative evidence of non-receipt. At the very least, this requires a plan to describe in detail its procedures for receiving, sorting, and distributing mail, to show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, to provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and to establish that had the document been received around the time the claimant asserted it was mailed, it would presently be at the location searched by the Plan Administrator.[8]

The Plan has asserted that the entirety of its administrative record on this determination has been admitted into evidence. There is nothing in that record to suggest that the Administrator conducted any fact-finding beyond that of "confirming" with the Third–Party Administrator that Schi-

7. In *Nunley v. City of Los Angeles,* we held that a "specific factual denial of receipt" by the addressee is sufficient to rebut the presumption of receipt in the context of the addressee's motion for an extension of time to file an appeal made under Federal Rule of Appellate Procedure, Rule 4(a)(6). 52 F.3d 792, 792–93 (9th Cir.1995). The extension was required in that case because the would-be appellant claimed not to have received notice of the entry of judgment. *Id.* at 793. Allowing a rebuttal of the presumption of receipt by a "specific factual denial" was therefore consistent with the general purpose of Federal Rule of Appellate Procedure 4(a)(6), which is to ensure that parties who have not received notice of the entry of judgment are not thereby deprived of the opportunity to appeal. *Id.* at 795. We are not certain that *Nunley*'s approach to the application of the rule would apply outside the Rule(a)(4)(6) context. However, even if it did, BankAmerica's simple statement that

did, BankAmerica's simple statement that Schikore's form is not presently contained in its files is insufficient to constitute a "specific factual denial of receipt."

8. *See Anderson v. United States,* 966 F.2d 487, 492 (9th Cir.1992) (rejecting, as not credible, government's rebuttal evidence which consisted of records of non-receipt); *Jones v. United States,* 226 F.2d 24, 27 (9th Cir.1955) ("The showing that a search of the pertinent files in the [addressee's] office revealed no record of the [relevant documents] having been filed is a purely negative circumstance, insufficient ... to rebut the presumption of delivery."); *In re* Longardner & Assocs., 855 F.2d 455, 459 (7th Cir.1988) (holding that denial of receipt is not sufficient to rebut mailbox presumption); *Legille v. Dann,* 544 F.2d 1, 7–8 (D.C.Cir.1976) (Patent Office presented, as rebuttal evidence, detailed mail receipt procedures, to rebut the presumption of receipt of documents claimed to be mailed by patent applicants).

kore's form was not currently on file at the Retirement Plans Service Center.

It is clear that the common law mailbox rule was not applied to Schikore's claim.[9] We find that the determination that the common law mailbox rule is inapplicable under ERISA, and the failure to develop any meaningful factual record upon which to make a determination, were both arbitrary and capricious and demonstrate a clear abuse of discretion by the Plan Administrator.[10]

## II. Remand to Plan Administrator

Neither party sought to introduce evidence beyond the administrative record in district court, and neither party sought a remand to the Plan Administrator for any other purpose. Both parties agree that such a remand is not necessary or desirable, because what is required here is a legal determination that the courts must ultimately make.[11] We agree that the central question in this case is not a question of discretion or the application of a standard contained in a plan or some other document. Rather, here, it is simply a matter of applying the correct legal rule—a common law rule—to the simple and undisputed facts. In that circumstance, we will not order a remand to the Administrator contrary to the expressed views of the parties. We therefore remand to the district court to review the administrative record before it, to apply the common law mailbox rule, and to determine whether the Plan received Schikore's form in a timely manner.

## III. Attorneys' Fees

Schikore requests an award of the attorney's fees incurred at the district court level and in this appeal under 29 U.S.C. § 1132(g)(1), which authorizes recovery of attorney's fees and costs in any ERISA action under 29 U.S.C. § 1132(a)(1)(B). The district court gave no reasons for its denial of fees to Schikore; the court therefore abused its discretion to grant or deny an award of fees. Accordingly we are required to set its decision aside. *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). Schikore is entitled to fees upon appeal, *Canseco v. Constr. Laborers Pension Trust*, 93 F.3d 600, 609–10 (9th Cir. 1996), the amount of which we remand to the district court for determination.

## CONCLUSION

We conclude that the Plan Administrator abused its discretion in denying Schikore lump-sum disbursement of her retirement benefits without applying the mailbox rule. In light of the parties' agreement that remand to the Plan Administrator by the district court was inappropriate, we hereby vacate that part of the court's order and remand to that court to apply the common law mailbox presumption to the facts contained in the administrative record already before it.

9. The record shows that it was legal counsel who advised the Plan Administrator that the common law mailbox rule was not applicable. Regardless of whether the Administrator relied on counsel in coming to its erroneous conclusion, the conclusion still constitutes an error of law and, thus, an abuse of discretion.

10. We are not presented with the question whether or in what manner a provision in a plan, of which the participants have notice, may reject the mailbox rule and adopt a contrary principle. Accordingly, we express no view on that question here.

11. We do not remand to a plan administrator where the plan administrator has neither engaged in the necessary factual inquiry, nor provided reasons for his determination and is therefore not entitled to substantial deference. *See Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir.1997).

Schikore is awarded attorneys fees incurred on this appeal, the amount to be determined by the district court, which shall also reconsider its prior denial of fees to Schikore.

AFFIRMED in part; VACATED in part; and REMANDED.

TASHIMA, Circuit Judge, dissenting:

I disagree with the majority that the Plan Administrator abused its discretion in denying Schikore's claim.

First, the majority implies that a heightened standard of review may be appropriate because of a potential conflict of interest between the employer responsible for funding Schikore's benefits and the Plan Administrator responsible for determining Schikore's eligibility for benefits. Maj. op. at 960 n. 2. It is true that an "apparent" conflict of interest exists when a plan administrator is responsible for both funding and paying claims.[1] *McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1108 (9th Cir.2000). However, unless the plan participant comes forward with " 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations,' " the district court should apply the traditional abuse of discretion standard. *Id.* (quoting *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1322–23 (9th Cir.1995)); *Bendixen v. Standard Ins. Co.,* 185 F.3d 939,

943 (9th Cir.1999). Schikore has not pointed to *any* evidence in the record to support her claim of a conflict of interest, let alone material and probative evidence; her generalized assertions are insufficient to support her claim.[2] *See Atwood,* 45 F.3d at 1323 (explaining that, "the simple fact that employees of [the participant's employer] made the decision to deny benefits is not enough to establish a breach of fiduciary duty"). The Plan Administrator's decision to deny accelerated payment of the benefits therefore should be reviewed under the more deferential abuse of discretion standard.

Under the traditional abuse of discretion standard, the "plan administrator's decision to deny benefits must be upheld ... if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith. The question we must ask is not 'whose interpretation of the plan documents is most persuasive, but whether the ... interpretation is unreasonable.' " *McDaniel,* 203 F.3d at 1113 (citation omitted) (quoting *Canseco v. Constr. Laborers Pension Trust,* 93 F.3d 600, 606 (9th Cir. 1996)) (second alteration in original). "Indeed, an administrator's decision is not arbitrary unless it is not grounded on *any* reasonable basis. Accordingly, a court may overturn a decision only where it is so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law."[3]

---

1. This assumes that the Plan Administrator is responsible for both funding and paying claims, an assumption that is open to question. In *Winters v. Costco Wholesale Corp.,* 49 F.3d 550 (9th Cir.1995), the case on which the district court relied in deciding to apply a less deferential standard of review, the plan at issue was the employer's *"self-insured* ERISA health benefits plan." *Id.* at 552 (emphasis added).

2. The majority's generalized allegations, *see* maj. op. at 960 n. 2, are similarly insufficient

to support application of the less deferential standard of review. *See Atwood,* 45 F.3d at 1323.

3. The *Hensley* court was applying the arbitrary and capricious standard of review, which the court described as "interchangeabl[e]" with the abuse of discretion standard. *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust,* 258 F.3d 986, 994 n. 4 (9th Cir.2001). "Any difference between the two standards ... is in name only." *Id.*

*Hensley v. Northwest Permanente P.C. Ret. Plan & Trust,* 258 F.3d 986, 1001 (9th Cir.2001) (citations and internal quotation marks omitted).

It is true that, "[u]nder ERISA, Congress has authorized the courts 'to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in [the Act].'" *Sec. Life Ins. Co. of Am. v. Meyling,* 146 F.3d 1184, 1191 (9th Cir.1998) (quoting *Peterson v. Am. Life & Health Ins. Co.,* 48 F.3d 404, 411 (9th Cir.1995)) (second alteration in original). Nonetheless, "the plain language of an ERISA plan should be given its literal and natural meaning." *Health Cost Controls v. Isbell,* 139 F.3d 1070, 1072 (6th Cir.1997). Thus, although federal common law "fills the gaps of ERISA to assist in the interpretation of ERISA plans, ... federal courts may not apply common law theories to alter the express terms of written benefit plans." *Id.* (citation omitted); *see also Richardson v. Pension Plan of Bethlehem Steel Corp.,* 112 F.3d 982, 985 (9th Cir.1997) (agreeing with the Sixth Circuit's statement that "'[w]hen disputes arise, courts should first look to [the] explicit language of the agreement to determine, if possible, the clear intent of the parties'") (quoting *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1293 (6th Cir.1991)).

The Plan states that the election form "shall become effective on the one year anniversary of the date the election is *received* by the Service Center." Plan ¶ 5.4(b) (emphasis added). The Plan also provides that "[i]f the Participant does not have a benefit payment election in effect when Employment ends, the Participant's benefits under the Supplemental Plan shall be paid in five annual installments commencing in the calendar year after the Participant attains age 65." Plan ¶ 5.3(b). The Plan thus explicitly states that the election form must be *received,* not mailed, in order to be effective. The Plan Administrator interpreted these terms as requiring actual receipt, not merely evidence of mailing. Again, we "may overturn a decision only where it is so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law." *Hensley,* 258 F.3d at 1001 (internal quotation marks omitted). The Plan Administrator's interpretation is certainly not patently arbitrary and unreasonable and, consequently, must be upheld. *See McDaniel,* 203 F.3d at 1113 (stating that a plan administrator's decision to deny benefits must be upheld if it is a reasonable interpretation of the plan's terms and was made in good faith).

The majority attempts to distinguish *Hensley* by stating that the instant case is not concerned with the interpretation of a Plan term.[4] Maj. op. at 962 n. 3. It is precisely the interpretation of a plan term that is at issue, however. The question is whether Schikore had an election form in effect when her employment ended. The Plan Administrator determined that the Service Center had not *received* Schikore's election form one year prior to her termination date, as required by the Plan, and that she accordingly did not have a form in effect. It was not unreasonable for the Plan Administrator to interpret receipt of

---

4. In *Hensley,* the plan administrators interpreted the term "employee" as a "W–2" employee for Internal Revenue Service purposes, even though the term was not defined as such in the plan. The district court decided that the administrators had abused their discretion by applying the W–2 definition, rather than the common law definition of "employee." On appeal, we reversed that aspect of the district court's decision, holding that the administrators were not required to apply the federal common law definition of the term. 258 F.3d at 1001.

the form as requiring the Service Center to have the form on file.[5] On the contrary, "plan administrators should be given the full benefit of the discretion afforded to them by their respective plans in interpreting plan terms, be they defined or undefined, with the reasonableness of those interpretations being evaluated against the relevant factual and legal backgrounds." *Hensley*, 258 F.3d at 1001.

The majority relies on *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038 (11th Cir.1998), in which the court held that common law presumptions against suicide and in favor of accidental death applied in an ERISA suit. *Id.* at 1040. The holding in *Horton* did not, however, contradict any express terms in the plans, nor did it encroach on the companies' discretion in interpreting the plans. The policies at issue provided benefits if the insured's death was accidental and occurred while the insured was on company business. The insurance companies denied benefits, based on "speculation" that the insured's death was a suicide, not an accident. *Id.* at 1042. The Eleventh Circuit held that, "when the evidence is inconclusive as to whether the deceased died by accidental or intentional means, use of the legal presumptions against suicide and in favor of accidental death are appropriate." *Id.* at 1040. The presumption against suicide therefore was employed as a means of weighing the evidence, but its application did not conflict with the express terms of the policies nor with the companies' rightful exercise of their discretion in interpreting the meaning of the policies.

By contrast, the majority's reasoning in the instant case both negates the Plan's requirement that the election form be "received" in order to be effective and imposes on the Plan Administrator the majority's own contrary interpretation of the receipt requirement. It is not merely, as the majority asserts, "a tool for determining, in the face of inconclusive evidence, whether or not receipt has actually been accomplished." Maj. op. at 961. The Plan requires that the election form be received by the Service Center. The Service Center had no record of having received the form. The Plan Administrator determined that this meant that the form was not received and so was not in effect. This interpretation of the receipt requirement is neither arbitrary nor unreasonable and should be upheld.[6] I therefore respectfully dissent.

---

**5.** The majority concludes that because the Plan relied *"only* on the fact that the form is not presently contained in its record," to find non-receipt, the evidence was somehow insufficient and inconsistent with ERISA. Maj. op. at 963 (emphasis added). But what else can a custodian of a record rely on, except on the record's absence, to prove non-receipt? Contrary to the majority's reasoning, it is a well-established and long-accepted evidentiary rule that the absence of a communication is proof that it was never received. *See* Fed. R.Evid. 803(7) (providing that "evidence that a matter is not included in [regularly kept] records" is admissible "to prove the nonoccu-

rence or nonexistence of the matter"); *United States v. De Georgia*, 420 F.2d 889, 892–93 (9th Cir.1969) (same).

**6.** Imposing the use of a common law presumption in the circumstances of this case goes beyond reviewing the Plan Administrator's decision for an abuse of discretion. It is unprecedented in that we are taking on a supervisory role not given to us by ERISA. Imposing such a requirement is no different than prohibiting an ERISA plan from relying on hearsay in making decisions or imposing other rules of evidence. I respectfully suggest that review for abuse of discretion does not

include such supervisory authority to impose rules of decision to govern ERISA decision-making.