**CITY OF MIAMI, a Florida municipal corporation, Plaintiff,**

v.

**BANK OF AMERICA CORPORATION; Bank of America, N.A.; Countrywide Financial Corporation; Countrywide Home Loans; and Countrywide Bank, FSB, Defendants.**

**CASE NO. 13–24506–CIV–DIMITROULEAS**

United States District Court, S.D. Florida.

Signed March 17, 2016

Lee M. Gordon, Elaine T. Byszewski, Hagens Berman Sobol Shapiro LLP, Pasadena, CA, Erwin Chemerinsky, The University of California, Irvine, CA, Howard Liberson, Joel Liberson, Trial & Appellate Resources, P.C., El Segundo, CA, Robert S. Peck, Washington, DC, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, Victoria Mendez, Office of the City Attorney, City of Miami, Miami, FL, Lance August Harke, Harke Clasby & Bushman LLP, Miami Shores, FL, for Plaintiff.

Christopher Stephen Carver, Akerman Senterfitt, Brendan I. Herbert, Akerman Senterfitt, Marissa Ximena Kaliman, Akerman, LLP, Miami, FL, James W. McGarry, Goodwin, Procter, LLP, Boston, MA, Matthew S. Sheldon, Thomas M. Hefferon, Goodwin Procter LLP, Washington, DC, for Defendants.

### ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLIAM P. DIMITROULEAS, United States District Judge.

THIS CAUSE is before the Court upon the Motion to Dismiss Second Amended Complaint (the "Motion") [DE 86], filed

herein on December 14, 2015 by Defendants Bank of America Corporation ("BoA"), Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, and Countrywide Bank FSB ("Defendants"). The Court has carefully considered the Motion [DE 86], the Plaintiff City of Miami ("Plaintiff" or "City")'s Response [DE 90], the Defendants' Reply [DE 91], and the oral arguments made by counsel at the March 11, 2016, hearing. The Court is otherwise fully advised in the premises.

## I.  BACKGROUND

This suit is brought pursuant to the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. § 3601 *et seq.*, to seek redress against Defendants

> for the economic impact of its longstanding, unbroken policy and practice of steering minority borrowers in Miami into "predatory" mortgage loans (defined herein as loans that have higher costs and risk features than more favorable and less expensive loans issued to similarly situated white borrowers) and for its policy of refusing to extend credit to minority borrowers who desired to refinance the more expensive loans they previously received when such credit was extended to white borrowers.

Sec. Am. Comp. [DE 84] at ¶ 1.

The Court dismissed Plaintiff's prior iteration of its complaint on July 8, 2014. *See* [DE 71]. Therein, the Court held the City lacked statutory standing to sue under the FHA[1], that the City's FHA claim

was barred by the statute of limitations, and that the City's claim for unjust enrichment failed to state a claim. *See id.* Although the Court held that it was "possible that an amendment could remedy the statute of limitations problems the Court [ ] identified with Plaintiff's Complaint," the Court ruled that an attempted amendment would be futile because of the City's lack of standing under the FHA to bring the action. *See* [DE 71] at p. 14, n. 4.

On September 1, 2015, the Eleventh Circuit entered an Order affirming the Court's dismissal of the City's unjust enrichment claim for failure to state a claim, reversing the Court's dismissal as to statutory standing under the FHA, and remanding the case to allow the City the opportunity to replead in attempt to cure the time-bar problem. *See City of Miami v. Bank of America Corp.*, 800 F.3d 1262, 1284, 1286–87 (11th Cir.2015) ("Appeal Op.").

The Eleventh Circuit's opinion also provided guidance to the parties and the Court on remand. For the City to avoid a second dismissal, it must plead a timely FHA claim by alleging sufficient facts to demonstrate discriminatory loans that were a continuation of Defendants' alleged practices closed within the limitations period (between December 13, 2011, and December 13, 2013). *See* Appeal Op., 800 F.3d at 1283–84. However, if the City could plead sufficient facts to show that such discriminatory loans closed within the limitations period, the City could "plausibly invoke the continuing violation doctrine" "at least at the pleading stage,"

---

1.  The Court held that the City lacked statutory standing because its claims fell outside of the zone of interests protected by the FHA and because the City's allegations were insufficient to demonstrate proximate causation be-

tween Defendants' allegedly discriminatory lending practices and the foreclosures on Defendants' loans in minority neighborhoods and to minority borrowers that the City claimed caused it economic harm.

despite the alleged changes over the years in the burdensome terms of the Defendants' mortgage loans. Appeal Op., 800 F.3d at 1284–86.

Additionally, regarding the pleading requirements for a disparate impact claim under the FHA, the Eleventh Circuit guided the parties and the Court that the Supreme Court's recent decision in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, —— U.S. ——, 135 S.Ct. 2507, 192 L.Ed.2d 514, (2015) ("*Inclusive Communities*") "may materially affect the resolution of this case." Appeal Op., at 1286. Thus, it instructed that:

> Any newly pled complaint must take into account the evolving law on disparate impact in the FHA context. Without the new pleadings before us, we have no occasion to pass judgment on how *Inclusive Communities* will impact this case, but we flag the issue both for the parties and for the district court on remand.

Appeal Op., at 1287.

On November 30, 2015, the City filed its Second Amended Complaint. [DE 84] ("SAC"). Defendants now move to dismiss the SAC on the grounds that (1) the City fails to allege a timely violation of the FHA; (2) the City fails to plead a disparate impact claim under *Inclusive Communities* ; and (3) three of the five Defendants should be dismissed because none of them are alleged to have made any loans since December 13, 2011. For the reasons set forth below, the Court grants Defendants' Motion to Dismiss.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir.2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir.2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir.2012).

### B. Statute of Limitations

As set forth in the Court's prior Order, for purposes of the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or termination of an alleged discriminatory ... housing practice ... to obtain appropriate relief with respect to

such discriminatory housing practice...." 42 U.S.C. § 3613(a)(1)(A). An FHA claim for extending a discriminatory loan begins to run from the date of the loan closing. *Id.; Phan v. Accredited Home Lenders Holding Co.*, 2010 WL 1268013, at *3 (M.D.Fla. Mar. 20, 2010); Appeal Op., at 1283.

■ This suit was filed December 13, 2013. *See* [DE 1]. Thus, the 2–year limitations period covers allegedly discriminatory loans which closed between December 13, 2011, and December 13, 2013. The City's invocation of the "continuing violation" doctrine is meaningless unless the City can plead a cognizable claim of an FHA violation within that limitations period. *See* MTD Order at 11; Appeal Op., 800 F.3d at 1285. With that in mind, the Court turns to the allegations of the SAC.

The SAC alleges the existence of 4 (four) property addresses that had discriminatory mortgage loans which closed during the 2–year limitations period (between December 13, 2011, and December 13, 2013). *See* SAC at ¶ 124. Regarding these purported FHA violations, Plaintiff merely alleges as follows:

> 124. Bank of America has continued to issue discriminatory loans in Miami subsequent to December 13, 2011. A sample of property addresses corresponding to the issuance of these loans is set forth below.
>
> 1350 NW 8th Ct., Unit C–3, 33136
>
> 701 Brickell Key Blvd., Unit 2408, 33131
>
> 1350 NW 8th Ct., Unit B3–5, 33136
>
> 800 N. Miami Ave., Unit E–1005, 33136

SAC at ¶ 124.

The SAC's sole new paragraph attempting to identify a timely FHA violation within the two-year limitations period is too conclusory to meet the *Twombly/Iqbal* pleading standard. In particular, the amendment suffers from the same lack of specifics that the Eleventh Circuit noted infected a similar property list contained in the initial Complaint—it "provide[s] no specific information (e.g., the type of loan, the characteristics that made it predatory or discriminatory, when the loan closed, when [and if] the property went into foreclosure, etc.) for each address." Appeal Op., 800 F.3d at 1283–84. Further, it would be impossible to conclude that Plaintiff plausibly alleged that Defendants violated the FHA within the limitations period with regard to these four asserted mortgage loans, as Plaintiff does not even allege that these loans were made to minority borrowers, let alone (a) any borrower's specific minority status, i.e., Hispanic, African–American, etc., (b) what type of loan was made, (c) how that loan was supposedly discriminatory, (d) when the loan closed, or (e) what basis the City has to claim the loan will default or enter foreclosure (and thus plausibly injure the City at some point).

The allegations in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)—a case upon which the City heavily relies—highlight the infirmity in the SAC's factual allegations. In *Havens*, the anchoring "timely" act of discrimination was alleged with the utmost specificity: "The complaint identified Paul Coles as a black 'renter plaintiff' who, attempting to rent an apartment from Havens, inquired on July 13, 1978, about the availability of an apartment at the Camelot complex, and was falsely told that no apartments were available." 455 U.S. at 368, 102 S.Ct. 1114. The *Havens* plaintiffs' identification of the affected individual, exact nature and location of the dis-

crimination, and specific date on which it occurred starkly contrast the City's reliance on four property addresses that are, in some not-alleged fashion, allegedly associated with "discriminatory" loans given to unidentified persons on unidentified dates.

The City contends that the Court should decline to examine the characteristics of the four allegedly discriminatory loans alleged in the SAC, as they are immaterial to the pleadings and inconsistent with the Eleventh Circuit's analysis. The Court disagrees. The Eleventh Circuit held that the City's claims could be viable under the continuing violation doctrine if and only if the City could cure its failure to allege an FHA violation within the limitations period. *See* Appeal Op., 800 F.3d at 1283–86. The Eleventh Circuit specifically stated that it was not ruling on the timeliness of the City's lawsuit. Appeal Op., 800 F.3d at 1284 (remanding so this Court could evaluate any proposed complaint as to the "limitations deficiency").

Thus, the issue here is not whether the continuing violation doctrine may apply, but whether the City has established the prerequisite to that doctrine: the identification of at least one timely and actionable claim of discrimination which serves as an anchoring FHA claim to which earlier, untimely claims might be tethered. *See* Appeal Op., 800 F.3d at 1283–84. Here, the City does not plead plausibly that Defendants violated the FHA within the limitations period. The City has added no factual detail to the SAC other than four property addresses which allegedly "correspond[ ] to the issuance of [discriminatory]

loans." *See* SAC ¶ 124. Thus, the City's claim of a continuing violation fails for want of an anchor FHA violation within the limitations period.

Further, the City does not allege that it suffered any injury from the four discriminatory loans it identified as having been made since 2011, nor does the City allege that it will suffer or even that it will likely suffer injury in the future because of these four loans. *See* SAC. Under City's own theory, not all discriminatory loans result in harm to the City for which it seeks redress; instead, only those loans that both end up in foreclosure and either reduce property tax values or require additional city services cause the City any harm. *See* SAC ¶ 132 ("The City's damages include lost tax revenues and the need to provide increased municipal services" resulting from increased foreclosures.).[2] The plain statutory language of the FHA provides that a plaintiff has no FHA cause of action unless the person is "aggrieved" by the alleged discrimination. Even those cases that entertain an FHA suit on the basis of a future injury require that the injury must be "imminent" and "certainly impending." *See, e.g. Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 959 (8th Cir.2001). However, in the instant action, the SAC fails to allege that any supposed future injury related to the four discriminatory loans alleged to have violated the FHA during the limitations is imminent or about to occur.

Based upon the foregoing, the SAC, like the earlier complaint, is again subject to dismissal on statute of limitations grounds.

---

**2.** Although City also alleges that the Defendants' conduct has "adversely affected" the City's interest in "promoting fair housing and securing the benefits of an integrated community" *see* SAC at ¶ 94, City does not seek recovery for anything other than the alleged economic losses to its treasury due to the effect of these loans on property taxes and municipal service expenditures.

## C. Disparate impact theory under the FHA

As set forth *supra*, the Eleventh Circuit instructed the parties and the Court that the Supreme Court's recent decision in *Inclusive Communities* "may materially affect the resolution of this case." Appeal Op., at 1286. Specifically, on remand, "[a]ny newly pled complaint must take into account the evolving law on disparate impact in the FHA context." Appeal Op., at 1287.

Inclusive Communities requires that an FHA disparate impact complaint (1) show statistically-imbalanced lending patterns which adversely impact a minority group; (2) identify a facially-neutral policy used by Defendants; (3) allege that such policy was "artificial, arbitrary, and unnecessary;" and (4) provide factual allegations that meet the "robust causality requirement" linking the challenged neutral policy to a specific adverse racial or ethnic disparity. *See Inclusive Communities*, 135 S.Ct. at 2522–24. While the SAC meets the first of these pleading requirements, it fails to meet the second, third, and fourth.

■ First, the policies alleged in the SAC are not facially neutral. Rather, the City's contentions that minority borrowers were "targeted" are comprised of allegations that minorities were intentionally discriminated against, not allegations that a neutral policy or policies produced a statistical imbalance. In fact, the SAC alleges a pattern of steering minority borrowers into disadvantageous loans. *See* SAC ¶¶ 1, 6, 41, 48, 58, 74, 82, 126, 127, 133. This is alleged intentional conduct, which is not a basis for a disparate impact FHA claim under the pleading standards set forth in *Inclusive Communities*. *See also* Appeal Op., 800 F.3d at 1275 (explaining "steering" as "guiding prospective buyers ... based on the buyer's race"); *Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir.1990) (addressing at length "whether there is such an animal" as "unintentional racial steering," and finding concept an oxymoron). The City also fails to allege facts demonstrating that the Defendants' alleged policies constituted "artificial, arbitrary, and unnecessary barriers." *See* 135 S.Ct. at 2523–24.

Finally, the City fails to meet *Inclusive Communities*' "robust causality requirement," which requires the City to "allege facts at the pleading stage ... demonstrating a causal connection" between the challenged policy and the alleged statistical disparity. *See* 135 S.Ct. at 2523.[3] The City argues that that it need not meet this requirement because the Eleventh Circuit's determination that the City "has made an adequate showing" of proximate cause governs, citing Appeal Op., at 1282. The Court disagrees. The proximate cause issue before the Eleventh Circuit was whether the alleged disparate impact was properly pleaded as the proximate cause of the City's damages, while the causation question at issue here is whether Defendants' alleged policies were properly pleaded as the cause of the alleged discriminatory impact. *See* Appeal Op., at 1283.

**3.** Moreover, the SAC fails to demonstrate that there was any disparate impact during the two year limitations period. Lumping together eight years of data (2004–2012) to allege a disparity does not make out a plausible claim that a disparity tied to Defendants' policies resulted in a single year (2012) within that data set. The City's aggregation is particularly deficient given that the 8–year period includes conduct of Defendants who made no loans at all in the only relevant year, 2012, and given that the City alleges that Defendants' policies changed over time.

## D. Dismissal of certain Defendants

Defendants argue that three of the five Defendants in this case—Bank of America Corporation, Countrywide Financial, Corporation, and Countrywide Home Loans, Inc.—should be dismissed from this action because the SAC does not allege that these Defendants made any mortgage loans during the 2–year limitations period. The Court agrees. Defendants Bank of America Corporation, Countrywide Financial, Corporation, and Countrywide Home Loans, Inc. are hereby dismissed from this action based on the City's failure to state a timely FHA claim against them.

## III. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Second Amended Complaint [DE 86] is hereby **GRANTED;**

2. The Second Amended Complaint [DE 84] is **DISMISSED** in accordance with this Order;

3. The City is granted leave to file an amended complaint, consistent with this Order, on or before April 15, 2016; a failure to do so shall result in the Court closing this case.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, this 17th day of March, 2014.