[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OFAPPEALS
ELEVENTH CIRCUIT
NOVEMBER 5, 2004
THOMAS K. KAHN
CLERK

_____

No. 04-10273

_____

D. C. Docket No. 02-00153 CV-3-CDL-4

ANNIE LOIS DIXON,

Plaintiff-Appellant,

versus

LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

( November 5, 2004)

Before BIRCH, BARKETT and COX, Circuit Judges.

COX, Circuit Judge:

The Plaintiff, Annie Lois Dixon, appeals the district court's grant of summary

judgment in favor of the Defendant, Life Insurance Company of North America

("LINA"). Because we conclude that the death of Annie Dixon's husband, Horace

Dixon, did not result "directly" from an accident and from "no other causes," we agree with the district court that she was precluded from recovering under Mr. Dixon's LINA accidental death policy. We affirm.

## I. FACTUAL BACKGROUND

LINA issued Group Policy No. OK 817074 to CSX Corporation providing accidental death benefits to eligible employees. These benefits were provided as part of an employee welfare benefits plan sponsored by CSX. As an eligible employee of CSX, Mr. Dixon was provided accidental death coverage under the policy. Mrs. Dixon was named the beneficiary.

The group policy provided in part:

We agree to pay benefits for loss from bodily injuries:

a)     caused by an accident which happens while an insured is covered by the policy; and
b)     which, directly and from no other causes, result in a covered loss.

We will not pay benefits if the loss was caused by:

(i)     sickness, disease or bodily infirmity; or
(ii)    any of the Exclusions listed on page 2.

(R.1-1 Ex. 1 Ex. A at 1.)

The "Exclusions" section of the policy provided:

No benefits will be paid for loss resulting from:
. . .

6. sickness, disease, or bodily infirmity. . . .

(*Id*. at 2.)

Mrs. Dixon, as beneficiary, filed a claim for benefits under the policy after her husband died in a single car accident near his home. LINA denied her claim, contending that Mr. Dixon's death was not "caused by an accident" but resulted from "other causes."

It is undisputed that Mr. Dixon died at the time, or shortly after, his car ran off the road into an embankment, rolling over onto its roof. Brad Willis, an eyewitness to the accident, states that he saw a pickup truck run Mr. Dixon's car off the road. Willis called 911, immediately checked Mr. Dixon's pulse, and was unable to detect a heartbeat. He pulled Mr. Dixon out of the car, checked his pulse again, and found he still had no pulse. The paramedics arrived and unsuccessfully administered CPR. Mr. Dixon was pronounced dead upon arrival at Meriwether County Hospital.

The cause of Mr. Dixon's death was heart failure. This is undisputed. But the parties dispute the relationship between the accident and Mr. Dixon's heart failure. The death certificate, prepared by the local coroner, lists the cause of death as an "accident." In describing how the injury occurred, the certificate said "motor vehicle accident." (R.1-16 Ex. 3 at 0390.) The death certificate identified the "immediate cause" of Mr. Dixon's death as "Thrombotic Occulusion, Circumflex Cornary Arterie

(sic)." (*Id*.) The certificate also noted as an "other significant condition" that a motor vehicle accident was a "contributing factor." (*Id*.)

The Georgia Bureau of Investigation Division of Forensic Science's medical report determined that the cause of death was "cardiac arrhythmia" due to "atherosclerotic and hypertensive heart disease." (*Id*. at 0286.) The medical report stated that there was no evidence of external injury to Mr. Dixon. (*Id*. at 0287-89.) The state medical examiner provided several pathologic diagnoses in the report: "I. Complete atherosclerotic and thrombotic occlusion, circumflex coronary artery. II. Hypertensive cardiovascular disease, with advanced left ventricular hypertrophy. III. Atherosclerosis of aorta, mild to moderate. IV. No evidence of trauma involving central nervous system, spine, thorax, or abdomen. V. History of motor vehicle accident. (*Id*. at 0289.) The examiner also noted that there was no evidence of damage due to any previous heart attack and concluded that Mr. Dixon "developed a sudden heart rhythm disturbance, as a consequence of complete blockage of one of the main arteries that supplies blood to the heart, accompanied by severe hypertensive cardiovascular disease. However, immediately prior to his death, the decedent was involved in a motor vehicle accident. . . . The manner of death is accident." (*Id*. at 0290.)

Mrs. Dixon retained a practicing cardiologist and professor at Emory University Medical School, Dr. Gordon Brandau, who reviewed all the medical evidence. Dr. Brandau concluded:

> Mr. Dixon died a sudden cardiac death due to coronary atherosclerotic heart disease and hypertensive cardiovascular disease. From eyewitness reports . . . Mr. Dixon's car was run off of the road by a truck traveling at a high rate of speed. It is my opinion that this emergent situation caused severe emotional and physiological stress precipitating Mr. Dixon's sudden cardiac arrest, and thereby, directly and accidentally causing Mr. Dixon's death.

(R.1-18 Ex. B at 1.)

LINA retained an independent forensic pathologist, Dr. James Lewis, to review the case. It was his opinion that "the cause of death was consistent with an acute coronary thrombosis due to atherosclerotic cardiovascular disease, due to hypertensive cardiovascular disease. . . . [T]he manner of death in this case is natural." (R.1-16 Ex. 3 at 0261.)

## II. PROCEDURAL HISTORY

Mrs. Dixon brought this action in the Superior Court of Talbot County, Georgia, to recover accidental death benefits under Mr. Dixon's LINA group policy. In addition, Mrs. Dixon sought a bad faith penalty and attorneys fees. LINA timely removed this case to the district court on the ground that the benefits at issue were

provided as part of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (1994) ("ERISA").

LINA filed a motion for summary judgment. It asserted that Mrs. Dixon's claims for breach of contract and for bad faith were preempted by ERISA, and that Mr. Dixon's death was not accidental within the meaning of the LINA policy. In response, Mrs. Dixon conceded that her claims were governed by ERISA and that her state law claims were preempted. She maintained, however, that Mr. Dixon's death was caused by an accident covered by the LINA group policy, entitling her to recover.

The district court granted LINA's motion for summary judgment, concluding that the language of the LINA policy unambiguously precluded recovery "unless the loss resulted 'directly' from an accident and 'from no other causes.'" (R.1-23 at 5.) Because it was undisputed that Mr. Dixon's underlying heart condition contributed to his death, the court found that no reasonable fact finder could conclude that his death resulted from an accident "and no other causes." Thus, the court concluded, the unambiguous language of the policy precluded recovery.

## III. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Granite State Outdoor Adver., Inc. v. City of Saint Petersburg*, 348 F.3d 1278, 1281 (11th Cir. 2003). Because the LINA policy does not give the plan administrator discretionary

6

authority to determine eligibility for benefits, this court, like the district court, construes the policy de novo, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989), making an independent determination of the issues and not giving any weight to a prior determination by the plan administrator. *United States v. Raddatz*, 447 U.S. 667, 690, 100 S. Ct. 2406, 2419-20 (1980).

## IV. CONTENTIONS OF THE PARTIES

Appellant argues that the district court erred in concluding that the LINA policy was unambiguous, precluding recovery by Mrs. Dixon under the terms of the policy. Appellant's position is that the language of the LINA policy is ambiguous, and that the court, in accordance with federal common law, should resolve any such ambiguity in favor of the insured. Appellant argues, accordingly, that the phrase "from no other causes" must be restricted to other *direct* causes only. Such a reading would provide benefits under the LINA policy as long as the auto accident was the "but for" cause of Mr. Dixon's death.[1]

Appellee contends that the LINA policy is unambiguous and is susceptible to only one meaning—benefits are payable only where the death results *solely* from the accident and cannot be attributed to any other direct or indirect cause. Therefore,

---

[1]Appellant also argues that the district court erroneously equated "cardiac arrest" with "thrombotic occlusion" and "cardiac arrhythmia." But this contention, even if correct, is irrelevant. It is undisputed that Mr. Dixon died of heart failure.

because it is undisputed that Mr. Dixon's heart disease at least contributed to his death, no benefits are payable.

## V. DISCUSSION

Although the parties have not so specified, Appellant's claim presumably is brought under section 1132(a)(1)(B) of ERISA, which allows a "participant or beneficiary" to bring a civil action to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). Although comprehensive in many respects, ERISA is silent on matters of contract interpretation. The courts have thus produced a body of federal common law providing such guidance. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998) ("Courts have the authority 'to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself.'") (citation omitted). When crafting this body of common law, "courts must examine whether the rule, if adopted, would further ERISA's scheme and goals." *Id*.

The issue of whether, and to what extent, language in an ERISA policy may preclude recovery for accidental injury where some preexisting condition was a contributing factor is one of first impression in this circuit. The Tenth Circuit, in an ERISA case involving a policy similar to the one before us, held that the words "directly and independently of all other causes" were not ambiguous. *Pirkheim v.*

8

*First UNUM Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). The *Pirkheim* court said:

> We hold the words "directly and independently of all other causes," given their plain and ordinary meaning in context of this particular insuring clause, are not ambiguous. In stating the "loss must result directly and independently of all other causes from accidental bodily injury," the policy imposes two obvious conditions. First, the loss must result *directly* from accidental bodily injury. Second, the loss must result *independently* of all other causes. In short, we agree with the district court the word "directly" modifies the phrase "from accidental bodily injury." Any other interpretation in this context is contrived.

*Pirkheim*, 229 F.3d at 1010-11 (emphasis in original). Similarly, the Sixth Circuit, in an unpublished opinion, held that the words "directly and independently of all other causes" in an ERISA policy were unambiguous and precluded recovery under the circumstances. *Criss v. Hartford Accident & Indem. Co.*, No. 91-2092, 1992 U.S. App. LEXIS 13288, at *4 (6th Cir. May 28, 1992). In *Criss*, the policyholder, Albert Criss, was injured in an auto accident while making a sales call. He was hospitalized, and on the third day of his hospitalization he went into cardiac arrest and died. *Id*. at *3. The evidence revealed that Criss likely died from a combination of heart disease and the injuries he sustained in the accident. *Id*. at *4-5. Because his death was at least partially due to his pre-existing heart condition, the Sixth Circuit held that the unambiguous language in the policy precluded recovery by his beneficiary.

9

[T]he dispute over whether his fatal heart attack was triggered by the underlying heart disease or by the trauma from injuries sustained in the car accident and the subsequent surgery becomes irrelevant in view of the exclusionary language of the insurance policies in question. These policies specifically exclude from coverage any loss resulting from sickness or disease. There being no doubt that Mr. Criss's death occurred from a combination of the underlying heart disease and injuries sustained in the collision, the question of which one of these two factors triggered the fatal heart attack is immaterial. Clearly, one of the factors causing the loss was the heart disease, which the policy excluded from coverage.

*Id*. at \*14-15.

The Fourth and Ninth Circuits have taken a different approach. In *Adkins v. Reliance Standard Life Insurance Co.*, 917 F.2d 794 (4th Cir. 1990), the Fourth Circuit adopted a "middle ground" test in cases involving language in an ERISA policy limiting recovery to injuries that were caused by accident "directly and independent of all other causes." Under the test adopted in *Adkins*, "a pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss." *Id*. at 797 (quoting *Colonial Life & Acc. Ins. Co. v. Weartz*, 636 S.W.2d 891, 894 (Ky. Ct. App. 1982)); *see also Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (4th Cir. 1993) (holding that in applying the *Adkins* rule, the court should apply a two-step test: "first, whether there is a pre-existing disease, pre-disposition, or susceptibility to injury; and, second, whether this pre-existing condition, pre-disposition, or susceptibility substantially contributed

to the disability or loss."). In the court's opinion, to adopt a strict and unambiguous interpretation of "directly and independent of all other causes" would yield untenable results. "[I]n order to recover under such policies as the one here involved, and with such a stringent construction, a claimant would have to be in perfect health at the time of his most recent injury before the policy would benefit him, and that, of course, is a condition hardly obtained, however devoutly to be wished." *Adkins*, 917 F.2d at 796. The Ninth Circuit has adopted the *Adkins* test, so long as the restrictive language is conspicuous. *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1136 (9th Cir. 1996) ("[W]e hold that if the exclusionary language here in question is conspicuous it would bar recovery if a preexisting condition substantially contributed to the disability. This could result in a denial of recovery even though the claimed injury was the predominant or proximate cause of the disability.").

We are persuaded by the reasoning of the Fourth Circuit. The coverage provided under the LINA policy at issue would be rendered almost meaningless if we were to adopt the strict interpretation advanced by Appellee. As the Fourth Circuit rightly pointed out, an overly strict interpretation of "directly and from no other causes" would provide insureds, or their beneficiaries, with coverage only where the insured was in perfect health at the time of an accident. The "substantially contributed" test gives this exclusionary language reasonable content without

11

unreasonably limiting coverage. And, it advances ERISA's purpose to promote the interests of employees and their beneficiaries. *See Firestone*, 489 U.S. at 113, 109 S. Ct. 956. We therefore adopt the "substantially contributed" test as the federal common law of this circuit. Thus, we will not consider Mr. Dixon's pre-existing heart disease as a cause unless it substantially contributed to his death.

While the "substantially contributed" test is more favorable to claimants than the strict test applied by the Sixth and Tenth Circuits, the Appellant here cannot satisfy it. Mr. Dixon suffered no external physical injuries from the auto accident. The Appellant's position is simply that the shock and freight of being run off the road by a speeding car triggered Mr. Dixon's heart attack. But, the undisputed evidence shows that Mr. Dixon's heart failure was directly due to his atherosclerotic and hypertensive heart disease. As the Appellant's own expert stated, "Mr. Dixon died a sudden cardiac death due to coronary atherosclerotic heart disease and hypertensive cardiovascular disease." (R.1-18 Ex. B at 1.) It is thus not disputed, on the record, that Mr. Dixon's pre-existing heart condition "substantially contributed" to his death, regardless of whether the auto accident was the immediate cause in that it triggered his heart attack.

## VI. CONCLUSION

We therefore conclude that the death of the Appellant's husband, Horace Dixon, did not result "directly" from an accident and from "no other causes" as required by the LINA group policy. The judgment of the district court is, therefore, AFFIRMED.