Linda L. ELLIOTT, Plaintiff,

v.

AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK, also known as AIG, Defendant.

No. 1:04–CV–1114–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 22, 2005.

## OPINION AND ORDER

FORRESTER, Senior District Judge.

This matter is before the court on Defendant's motion for summary judgment [12], Defendant's motion to strike affidavits [17], Defendant's motion to strike Plaintiff's response [20], Plaintiff's motion for leave to file a response to Defendant's reply in support of its motion for summary judgment [22], and Plaintiff's motion to strike Defendant's reply brief in support of its motion for summary judgment [23].

## I. Statement of the Case

### A. Procedural History

Plaintiff, Linda L. Elliott, brought suit against Defendant, American International Life Assurance Company of New York ("AIG"), on March 29, 2004 claiming violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132. Defendant removed the case to federal district court on April 22, 2004.[1] Defendant's motion for summary judgment was filed October 18, 2004. On November 22, 2004, Defendant filed a motion to strike two affidavits submitted by Plaintiff. On December 17, 2004, Defendant moved to strike Plaintiff's response to its reply brief in support of summary judgment. Plaintiff then filed a January 3, 2005 motion for leave to respond to Defendant's reply brief and simultaneously moved to strike Defendant's reply brief.

### B. Facts

Defendant is the claims administrator for a group accident insurance policy issued for the employees of Marsh & McLennan, which became effective January 1, 2002.[2] Plaintiff, a Marsh & McLen-

Stanley Morris Lefco, Law Offices of Stanley M. Lefco, Atlanta, GA, for plaintiff.

Gary Richard Kessler, Irvin Stanford & Kessler, Atlanta, GA, for defendant.

1. Plaintiff filed an amended complaint on August 20, 2004. Defendant consented to this amendment, which corrected the proper names of the parties.

2. As Plaintiff has not properly disputed any of Defendant's stated material facts, these are deemed admitted by this court. L.R. 56.1A(2), N.D. Ga.

nan employee, obtained coverage under this policy for herself and for her husband, Jerry Elliott. The policy defines an injury as "a bodily injury caused by an accident occurring while this Policy is in force as to the person whose injury is the basis of this claim and resulting directly and independently of all other causes in a covered loss." Defendant's interpretation of its policy is designed to maximize the benefits available to the entire class of participants and beneficiaries at the cost employers of Marsh & McLennan's size are willing to incur as part of a benefits package for their employees. The plan's summary plan description ("SPD") provides that claims and plan administrators, as well as any reviewing committee, have full discretion to determine all claims under the plan. The SPD further provides that a determination arising from this review procedure is final and binding upon the administrator, Defendant, plan participant, and family members of the plan participant.

Jerry Elliott was involved in an automobile accident on January 4, 2002. Elliott's accident was caused by his distraction while driving. Elliott was admitted to hospital on January 4 and died on January 8, 2002, while still hospitalized. At admission, Elliott was suffering from low blood pressure, hypothermia, and multiple organ contusions. Elliott also had preexisting conditions of heart disease, diabetes, and high blood pressure of at least fifteen years' duration. Elliott's death certificate indicated the immediate cause of death was cardiac arrest due to, or as a consequence of, a myocardial infarction. That heart attack, in turn was the result of hypertension and congestive heart failure. Hospital personnel completed a Medicolegal Clearance form concerning Elliott's death, on which they indicated the death did not occur due to casualty, defined to include a car wreck, injury, trauma, or delayed effects of injury.

Plaintiff's claim for benefits from Jerry Elliott's death was referred to a senior examiner, who reviewed the plan document and SPD, as well as the death certificate and medical records. Defendant's senior examiner referred the claim to an independent investigative firm, and also contacted Plaintiff to invite submission of all relevant information about the claim. The independent investigative firm also interviewed Plaintiff. The firm eventually submitted to the senior examiner all relevant records, which she reviewed and discussed with her supervisor, the manager for accidental death and dismemberment claims. The senior examiner's recommendation was to deny Plaintiff's claims because the car accident was not the direct and independent cause of Elliott's death. The manager, Ms. Myra Zimmerman, agreed with that recommendation. Defendant's senior examiner then informed Plaintiff by May 31, 2002 letter of the denial of her claim as well as her right to appeal that denial.

Plaintiff did administratively appeal the denial, and Defendant requested an independent medical review of the claim by GENEX Services. GENEX, in turn, contacted Dr. Michael Adickman. Dr. Adickman reviewed the decedent's head, cervical spine, chest, abdominal and pelvic CT scans as well as an echocardiogram and X-rays of the chest and thoracic cavity. After review, Dr. Adickman opined that Elliott's accident did not cause his death directly and independently of all other causes. Adickman's opinion was that Elliott had likely suffered from a silent heart attack while driving, which had evolved during hospitalization to congestive heart failure and then death. Adickman further noted that the only documented accident injuries were a cerebral concussion and superficial abrasions, which would not have contributed to Elliott's death. Upon receiving Adickman's opinion, Defendant referred the appeal to its appeal committee

and so informed Plaintiff. The appeal committee consisted of a medical doctor, underwriter, claims manager, and two vice presidents of claims. No one from the accidental death and dismemberment group, which had originally handled the claim, was on the appeal committee. At its April 10, 2003 meeting, the appeal committee upheld the denial of Plaintiff's claim. Plaintiff was informed of this decision by letter of May 15, 2003.

By letter of July 2, 2003, Plaintiff's counsel informed Defendant that her own independent doctor had reviewed the medical records and disagreed with Defendant's conclusion as to cause of death. The letter also demanded payment of the death benefit of the policy, which was $180,000.00. Defendant contacted Marsh & McLennan to see if reconsideration of the policy was warranted and after reviewing the SPD determined that the appeal committee's decision was final and binding. Nevertheless, in an August 22, 2003 letter Defendant informed Plaintiff's counsel that while the decision was final and binding, it was willing to consider the doctor's report referenced in the July letter. Therefore, on November 26, 2003, Plaintiff sent Defendant a copy of Dr. Ronald Kaplan's letter, which stated that Elliott suffered damage to his chest wall and heart in the accident, and it was these injuries which caused the heart attack. The letter further stated that Elliott would not have died but for the accident. Kaplan's letter also referenced a portion of Adickman's report which Kaplan believed indicated the latter's agreement with his position. The referenced Adickman statement said, "In summation, the major factors contributing to Mr. Elliott's death, as well as the accident itself, were the diabetes and atherosclerotic cardiovascular disease, resulting in his third myocardial infarction with relentless congestive heart failure." Kaplan took that statement to mean the accident itself was a major factor contributing to Elliott's death. Kaplan's report was sent to Adickman to see if his opinion was changed, but Adickman stated his opinion was unchanged and the referenced sentence was not properly understood. Adickman indicated his sentence should have read, "In summation, the major factors contributing to Mr. Elliott's death were the diabetes and atherosclerotic cardiovascular disease." On February 18, 2004, Defendant sent Plaintiff a copy of Adickman's response to Kaplan's report and informed her that the denial of her claim stood.

## C. Contentions

Defendant contends that its decision to deny benefits under the insurance plan was correct, as Jerry Elliott's death was not solely caused by injuries sustained by the accident but rather was primarily caused by preexisting conditions. Plaintiff contends that Defendant has not properly appreciated the extent of the injuries Elliott incurred in the accident and contends that Elliott would not have died but for the accident. Thus, Plaintiff contends she is entitled to benefits under the policy.

## II. Discussion

### A. Preliminary Matters

Following the filing of the motion for summary judgment, both Plaintiff and Defendant have engaged in a spate of motions and responses objecting to various filings made with this court. First, Defendant has moved to strike the affidavits of Drs. Levine and Kaplan, attached to Plaintiff's response to summary judgment. Defendant contends that as these affidavits were not part of the administrative record, it is improper for this court to consider those affidavits. In *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir.1989), a district court reviewing the denial of benefits considered not only those pieces of evidence that had

been before the plan administrator but also the subsequent testimony of a doctor containing information that had not been presented to the administrator. The Eleventh Circuit held that the district court did not properly follow the arbitrary and capricious standard and remanded for reconsideration consulting only those materials before the plan administrator at the time of his decision. *Id.* at 1139–40. Following *Jett*, the court must agree that it would be improper to consider affidavits not before the claim administrator when reviewing the decision of that administrator under the heightened arbitrary and capricious standard. Accordingly, Defendant's motion to strike the affidavits of Drs. Kaplan and Levine is granted.

Also before the court are Defendant's motion to strike Plaintiff's response or sur-reply, Plaintiff's motion for leave to file a response to Defendant's reply brief in support of its motion for summary judgment, and Plaintiff's motion to strike Defendant's reply brief. Defendant's reply brief, which chiefly served as a notice of the new authority of *Dixon v. Life Ins. Co. of North America*, 389 F.3d 1179 (11th Cir.2004), was filed on November 22, 2004 This reply brief prompted Plaintiff to file a reply to that brief on December 13, 2004. A Plaintiff had already responded to Defendant's motion for summary judgment, Plaintiff's reply was a sur-reply, which is not contemplated by the Local Rules of this court. L.R. 7.1, 56.1A, N.D. Ga. Accordingly, Plaintiff needed to seek leave of this court before filing a sur-reply, yet did not do so. Subsequently, Plaintiff did move for leave of this court to reply to Defendant's reply brief. Plaintiff's sur-reply is largely argument based upon the *Dixon* opinion. Finally, Plaintiff filed a motion seeking to strike Defendant's reply brief altogether, arguing that the brief was untimely for being filed outside the ten days provided by the Local Rules for responses. L.R. 7.1C, N.D. Ga. Given that Plaintiff's motion

to strike was filed on January 3, 2005, more than ten days after the November 22, 2004 filing it seeks to strike, the untimeliness objection seems incongruous. Regardless, the court believes that it was appropriate for Defendant to bring to the attention of new authority, and equally appropriate to allow Plaintiff to respond to this new authority, raised for the first time in a reply brief. Accordingly, the court grants Plaintiff leave to file a sur-reply. Plaintiff's motion to strike Defendant's reply brief, and Defendant's motion to strike Plaintiff's sur-reply, are denied as moot.

**B. Summary Judgment**

■ The central issue in this matter is the denial of plan benefits, and so this case falls within ERISA section 1132(a)(1)(B), which allows a beneficiary to bring a civil action to recover benefits under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). While generally ERISA claims are to be evaluated *de novo* by the federal courts, *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), if the plan documents at issue explicitly grant the claims administrator discretion to determine eligibility under the plan or interpret the terms of the plan, an arbitrary and capricious standard of review will apply. *HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 992 (11th Cir.2001). The parties do not dispute that such a grant of discretion is made by the plan at issue. If the claim administrator is acting under a conflict of interest, however, a heightened arbitrary and capricious standard will apply. *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir.2001); *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1566 (11th Cir.1990). Defendant concedes that it was in fact operating under a conflict of interest. Accordingly, this court will review the denial of plan benefits to

Plaintiff under the heightened arbitrary and capricious standard.

▮▮▮ Review of a claim administrator's interpretation of an ERISA plan entails the completion of a highly complex series of inquiries. Regardless of the standard of review, as a first step, the claim administrator's interpretation of the plan is reviewed to see whether this court disagrees with that interpretation; in simpler words, the review is meant to determine whether the administrator's interpretation was simply wrong. *HCA*, 240 F.3d at 993. Should the claim administrator's decision be determined wrong, the second step is to see whether the claimant has proposed a reasonable interpretation of the plan himself. *Id.* at 994. Even if the claimant's proposed interpretation is reasonable, however, the court must further determine whether the claim administrator's wrong interpretation was nevertheless reasonable. *Id.* Given the taint of self-interest, however, a court must still require the claim administrator to show that its wrong-but-reasonable decision was not self-interested, which is accomplished by showing that its interpretation interprets participants and beneficiaries as a whole. *Id.* at 994–95. Despite all of these findings, a claimant is still entitled to show by other measures that the administrator's decision was in fact arbitrary and capricious. *Id.* at 995.

In *Dixon v. Life Ins. Co. of North America*, 389 F.3d 1179 (11th Cir.2004), the Eleventh Circuit Court of Appeals considered an ERISA claim based upon a similar insurance policy. In *Dixon*, the plaintiff was issued an accidental death insurance policy which specified that, "We agree to pay benefits for loss from bodily injuries: a) caused by an accident which happens while an insured is covered by the policy; and b) which, directly and from no other causes, result in a covered loss." *Id.* at 1180. Dixon's husband was killed in a car accident in which his car ran off the embankment and rolled over. *Id.* at 1180–81. Mr. Dixon was pronounced dead at the scene, and his death was credited to heart failure. *Id.* at 1181. The death certificate listed the cause of death as an accident and further stated the immediate cause of death was thrombotic occlusion and circumflex coronary artery. *Id.* As a significant condition, the certificate listed the car accident as a contributing factor. *Id.* The Georgia Bureau of Investigation also issued a medical report and listed the cause of death as cardiac arrythmia caused by atherosclerotic and hypertensive heart disease. *Id.* Further, the state medical examiner pointed to the same heart problems but also stated the manner of death was accident. *Id.* The insurance company retained an independent forensic pathologist who concluded that the manner of Mr. Dixon's death was natural. *Id.* The district court granted summary judgment to the insurer, concluding that the insurance policy unambiguously precluded recovery unless the death resulted directly from the accident and from no other cause. *Id.* at 1182. As it was undisputed that Mr. Dixon's heart condition contributed to his death, the district court concluded that no reasonable fact finder could conclude that the death was from accident and no other causes, and thus that the policy language barred Dixon's recovery under the policy. *Id.*[3]

On appeal, the Eleventh Circuit considered the proper interpretation of the "directly and from no other causes" language in the accidental death policy. Noting that it was a question of first impression in this

---

**3.** Unlike the policy at issue in this case, the Dixon policy did not give the plan administrator discretionary authority to determine bene-

fits eligibility. Accordingly, the Dixon court considered the ERISA claim on a *de novo* standard of review. *Dixon*, 389 F.3d at 1182.

circuit, the panel reviewed case law from other circuits before rejecting a strict construction of that language. *Id.* at 1184. Instead, following the Fourth and Ninth Circuits, the Eleventh Circuit determined that a preexisting infirmity or disease cannot be considered a cause of death under such language unless it is a substantial cause of death. *Id.* Turning this test to the facts of the Dixon case, the appellate court noted that there were no injuries to Mr. Dixon from the accident. *Id.* As the undisputed evidence showed that Dixon's preexisting condition was the cause of his heart failure, this was considered sufficient evidence of substantial causation to affirm the district court's grant of summary judgment to the insurer. *Id.* at 1184–85.

 Comparing the facts of the present action to *Dixon,* it is first clear that, unlike Mr. Dixon, Mr. Elliott sustained serious injuries in the automobile accident. As pointed out by Plaintiff's submissions to the administrative record, Mr. Elliott had multiple organ bruising and experienced, *inter alia,* extremely low blood pressure. What is also clear from the record, however, is that with the exception of Plaintiff's hired experts, all of the information and analysis considered by Defendant pointed to a conclusion that it was Mr. Elliott's preexisting conditions that caused his death. Moreover, even though Plaintiff's expert testifies as to his belief that the injuries from the accident were a "but-for" cause of Mr. Elliott's death, this testimony is not inconsistent with a finding that Mr. Elliott's preexisting conditions were not also a substantial cause of the accident. The first step of an ERISA benefits inquiry is a determination of whether the claim administrator's benefits decision was simply wrong. Unlike *Dixon,* this court must consider the benefits eligibility determina-

tion made by Defendant under the less stringent heightened abuse of discretion standard. Considering the fact that the accident report, the hospital report, and Defendant's independent medical expert all concluded that Elliott died because of his preexisting conditions, and did not credit the injuries sustained in the accident, the court cannot find that Defendant's decision was wrong. Even if the court were to consider Defendant's decision wrong, however, it would not be able to find the decision both wrong and unreasonable. Moreover, it is undisputed that Defendant interpreted its plan in order to benefit the entire class of participants and beneficiaries. Plaintiff has proffered no other evidence of Defendant's self-interest. Accordingly, the court must grant Defendant's motion for summary judgment.

### III. Conclusion

Defendant's motion for summary judgment [12] and Defendant's motion to strike affidavits [17] are GRANTED. Plaintiff's motion for leave to file a response to Defendant's reply in support of its motion for summary judgment [22] is GRANTED. Defendant's motion to strike Plaintiff's response [20], and Plaintiff's motion to strike Defendant's reply brief in support of its motion for summary judgment [23] are DENIED AS MOOT.