**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  08a0168n.06**
**Filed:  March 26, 2008**

**No. 07-1371**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHARLES THIEL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LIFE INSURANCE COMPANY OF NORTH | ) | EASTERN DISTRICT OF MICHIGAN |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  DAUGHTREY and SUTTON, Circuit Judges; and POLSTER, District Judge.[*]

PER CURIAM.   In this ERISA action, Charles Thiel seeks benefits under an accident-only disability policy.  Because Thiel did not become disabled "as a direct result" of the accident "and from no other cause," as the terms of the policy require, the district court correctly upheld the insurer's denial of benefits.  We therefore affirm.

I.

---

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

In 1967, Charles Thiel began working for a company now known as Avaya, Inc. Thiel participated in the Avaya Inc. Business Travel Accident Benefit Plan ("the Plan"), an accident-only policy insured by the Life Insurance Company of North America ("the insurer").

On August 6, 2002, while Thiel was in Chicago on a business trip, a hit-and-run driver struck him from behind as he attempted to cross the street. He filed a claim for accident-only disability benefits with Avaya, claiming he was "totally disabled" under the policy. The insurer denied benefits because Thiel's disability was "primarily the result of his pre-existing degenerative [lumbar] disc disease."

Thiel filed this ERISA action against Avaya, the Plan and the insurer. The parties filed cross-motions for judgment on the administrative record. After dismissing Avaya and the Plan from the case, the district court entered judgment in favor of the insurer.

## II.

### A.

We need not enter the thicket created by the parties' debate over whether de novo review or arbitrary-and-capricious review governs this claim. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Thiel's claim fails under either standard.

The policy provides benefits if a claimant is injured by a qualifying accident and "becomes totally disabled *as a direct result, and from no other cause*, within 365 days after the accident."

(emphasis added). According to the insurer, this language means that, whenever a pre-existing condition played any role, no matter how small, in causing the disability, no coverage exists. *See Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010–11 (10th Cir. 2000) (enforcing policy language requiring that the "loss must result directly and independently of all other causes from accidental bodily injury" and denying benefits where the insured's death "did not occur independent of all other causes") (emphasis omitted). According to Thiel, this language means that a claimant with a pre-existing condition may recover benefits unless the pre-existing condition "substantially contributed to" the disability. *Tolley v. Commercial Life Ins. Co.*, No. 92-6490, 1993 WL 524284, at *3 (6th Cir. Dec. 17, 1993) (per curiam) (internal quotation marks omitted); *see also Medford v. Ins. Co. of N. Am.*, No. 95-35163, 1996 WL 405055, at *3 (9th Cir. July 18, 2006); *Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179, 1184 (11th Cir. 2004); *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794, 797 (4th Cir. 1990).

We need not take sides on this debate either. Even under the more lenient construction of this language, the one favoring Thiel, he cannot shake free from the record-compelled conclusion that his pre-accident back problems "substantially contributed to" his disability. The undisputed medical evidence, to begin with, confirms that Thiel had serious back problems before the accident. Doctors performed two lumbar laminectomies on Thiel at the L4-L5 level—one in 1986 and one in 1995. By 2002, the year of the accident and sixteen years after his first surgery, Thiel's back pain remained a serious problem. Just four months before the accident, an MRI showed "severe degeneration of the L4-5 disc space," as well as "[c]omponents of lumbar stenosis" at L3-L4 and L5-

S1. Three months before the accident, Dr. Sidhu noted "back pain in the lower back [and] radiation to the right buttock, thigh and leg" that had been ongoing "for the past 1-1/2 years," as well as "loss of disk height at L4-5" at a "level [that was] almost bone on bone." Sidhu recommended physical therapy and a series of epidural injections, and he prescribed pain medications. A little over two months before the accident, Dr. Macon diagnosed Thiel with "lumbar radiculopathy" and noted that he had "[s]ensory decreased sensation [in the] right lower extremity [at] the L4-L5 distribution."

While the accident may have affected the degree of Thiel's physical ailments, it did not affect their kind. An EMG from August 28, 2002, three weeks after the accident, "demonstrat[ed] some chronic features of low grade S1 radiculopathy and more subacute, but still low grade [r]ight sided L4-L5 radiculopathic features." In describing the condition as "chronic," Dr. Giancarlo conveyed that it was an ongoing, not an accident-induced, problem, *see* Stedman's Medical Dictionary 79120 (27th ed. 2000), and indeed the record shows that Thiel had suffered from lumbar radiculopathy since at least May 2002. In September, an MRI showed "evidence of degenerative disc disease with mild bulging disc" at L4-L5 and "minimal bulging discs at L5-S1 and L3-L4 disc space levels" but no "evidence of recurrent or residual herniated disc." Before his accident, Thiel likewise had experienced disc degeneration at L4-L5 and likewise showed no signs of a herniated disc. In January 2003, a radiology examination revealed "evidence suggestive of a small central disk herniation at L5-S1" and "postoperative changes related to laminectomy surgery at the L4-L5 level," including "extensive hypertrophic spurring of the facet joints bilaterally at L4-L5." The

January 2003 examination thus connects his disability in part to spurring "related to" his prior laminectomy.

The physicians' post-accident opinions either show that Thiel's pre-existing back problem substantially contributed to his disability or are consistent with that conclusion. No physician took a contrary view, and one physician concluded that factors unrelated to the accident contributed at least 60 percent to the disability. In December 2002, Sidhu said that he "d[id] not believe [Thiel was] able to work at all" "[b]ecause of [his current] symptomatology and his history of previous surgery." In April 2003, Thiel's chiropractor concluded that his "maximum capacity" to perform basic functions was "hampered by his spinal injuries" without specifying the cause of those injuries. And in May 2004, after reviewing Thiel's file at the request of the insurer, Dr. Nakkache, a neurosurgeon, opined that "at the very most [Thiel] suffered an aggravation of a pre-existing condition and as such, no more than 40% disability can be afforded as a result of the injury on August 6, 2002." No other physician gave an opinion on the degree to which the accident contributed to Thiel's disability, and no physician's findings contradict Nakkache's estimate.

Thiel maintains that his disability "direct[ly] result[ed]" from the accident, "and from no other cause," because his medical records show herniation and bulging only *after* the accident. That just shows, however, that Thiel's back problems may have worsened after the accident; it does not contradict the evidence that his serious pre-existing conditions "substantially contributed to" his disabling back problems. It also remains unclear whether the disc herniation stemmed from the

accident or represented a gradual progression of Thiel's pre-existing back problems, given that medical records before the accident (in May 2002) and shortly after the accident (in September 2002) showed no signs of herniation and that the first sign of herniation did not occur until four months after the accident.

Thiel adds that the insurer should have sought an independent medical examination and that we should discount Nakkache's opinion because he never examined Thiel. "[F]ailure to conduct a physical examination . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). But that is not true here. Nakkache reviewed the relevant materials and relied on clinical tests and on physician opinions. *Cf. Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 510 (6th Cir. 2005). Objective medical evidence supports his conclusion. *Cf. Calvert*, 409 F.3d at 297. And his opinion did not contradict the opinion of Sidhu or of any other treating physician. *Cf. id.*

Nor does the policy's definition of "disability" or the fact that Thiel has qualified for disability benefits with the Social Security Administration change matters. The insurer does not dispute that Thiel was disabled, and it does not dispute that the policy provides a functional definition of disability. The question is what *caused* Thiel's current disability and to what degree. And the problem for Thiel is that none of these definitions of disability (and for that matter none of

the opinions of Thiel's treating physicians) shows that his pre-existing back problems did not substantially contribute to his disability.

Invoking our decision in *Tolley*, Thiel argues that, because he could work before the accident, but not after it, the accident must have caused his current disability. 1993 WL 524284, at *4. But in *Tolley*, there was no indication that the plaintiff suffered from any symptoms in the year and a half leading up to his disabling injury or that his condition "materially impaired [his] health." *Id.* Here, by contrast, there is abundant evidence that Thiel received ongoing treatment for serious back problems in the months leading up to the accident—problems that were similar in kind to his post-accident conditions. Thiel's pre-accident conditions, in short, substantially contributed to his current disability.

## B.

The parties also debate our authority to resolve Thiel's appeal with respect to the Plan. Because counsel for Thiel sensibly acknowledged at oral argument that he did not wish to press this issue in the event we affirmed the district court's ruling as to the insurer, we need not reach this issue.

## III.

For these reasons, we affirm.

No. 07-1371
*Thiel v. Life Ins. Co. of N. Am.*