**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13140

————————————

BRITTANY FINNEY,

*Plaintiff-Appellant,*

*versus*

METROPOLITAN LIFE INSURANCE COMPANY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:22-cv-01046-CLM

————————————

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

GRANT, Circuit Judge:

Selina Anderson did not expect her life to end shortly after she broke her leg from tripping and falling in a parking lot, but years of chronic disease had left her vulnerable. The stress of

surgery was too much for her body to overcome, and she passed away less than a week after the accident. Anderson's daughter filed a claim for accidental death benefits, but the insurance company denied it, citing a policy exclusion that bars payment when the insured's "physical or mental illness" "contributed to" a death. Because that decision was not arbitrary or capricious, we affirm.

## I.

Selina Anderson fell while getting out of a vehicle in an athletic field parking lot. She was rushed to the emergency room, where her knee appeared "[m]arkedly swollen and deformed." X-rays revealed that her leg was broken in two places. Orthopedic surgery soon followed, but things went from bad to worse when her body could not handle the stress of surgery. A blood clot lodged in her lung, wreaking havoc on her lung tissue. Pneumonia, diffuse alveolar damage, and bilateral subpleural fibrosis followed. Essentially, Anderson's lungs were shutting down, and she died a few days later. Her autopsy report listed her cause of death as "pulmonary embolism"—the blood clot. While concluding that her leg fractures "were likely responsible for the final event," the autopsy also emphasized her history of "underlying interstitial lung disease." A chronic smoker, Anderson had long struggled with lung disease and other serious health issues. In fact, she needed steroids and home oxygen therapy to get by in her daily life.

This sad series of events ended up in federal court because Anderson worked for the federal government and had a life insurance policy through the Federal Employees' Group Life

Insurance Act of 1954 (FEGLI).  *See* 5 U.S.C. § 8701 *et seq.*  By statute, the Office of Personnel Management administers FEGLI, and may "prescribe regulations necessary to carry out" its purposes.  *Id.* § 8716(a).  OPM may also purchase insurance policies from private companies like MetLife.  *Id.* § 8709(a).  Those companies are then in charge of approving and denying individual claims.  And when there is a dispute, the claimant may sue the insurer for breach of contract.  *See* 5 C.F.R. § 870.102 (1997).

FEGLI offers two types of policies: "group life insurance" and "accidental death and dismemberment insurance."  5 U.S.C. § 8709(a).  Life insurance is the more familiar concept—if the insured dies while the policy is in force, a beneficiary receives payment from the insurer.  Though less common, accidental death insurance is what it sounds like—if the insured dies from an accident, the insurer will pay extra benefits, separate and apart from the standard life insurance payment.

Like countless other federal employees, Anderson signed up for group life insurance.  With important caveats, MetLife promised to pay her beneficiary, Brittany Finney, $57,000 in the event of Anderson's death and another $57,000 if her death was accidental.  After Finney, Anderson's daughter, filed both claims with MetLife, she received a check for $57,000—half of what she requested.  MetLife's denial letter offered two independent reasons. *First*, it said Anderson's death was not "accidental" because it did not result "directly" from "a bodily injury caused solely through violent, external, and accidental means."  *Second*, MetLife said

Anderson's "known history" of chronic lung disease "contributed to" her death, triggering a separate physical illness exclusion.

Finney sued, claiming that MetLife's denial breached the insurance contract. Because the case involved no factual disputes, both sides filed motions for judgment as a matter of law. *See* Fed. R. Civ. P. 50(a)(2). The district court ruled for MetLife, concluding that MetLife reasonably denied Finney's claim under the policy's physical illness exclusion. This is Finney's appeal.

## II.

We review de novo a district court's order granting a party's motion for judgment as a matter of law. *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000).

## III.

Under Anderson's FEGLI policy, MetLife has discretion to decide whether claimants are entitled to benefits. Even if we were skeptical about MetLife's conclusion that Anderson's death fell outside the scope of the policy's coverage provision, we agree with the district court that MetLife reasonably invoked the policy's physical illness exclusion to deny Finney's claim.

## A.

An insurance policy is a contract—a bargain between the insurer and the insured. And "the contract itself" is "the measure of the insurer's liability." 1B John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 391 (1981). We construe insurance contracts like any other: "by their terms and consistent with the

intent of the parties." *CITGO Asphalt Refin. Co. v. Frescati Shipping Co.*, 589 U.S. 348, 355 (2020) (quotation omitted).  In doing so, we give effect to the "clear and unambiguous" meaning of the words used.  *Id.* (quotation omitted); *see* Restatement (Second) of Contracts § 203(b) (A.L.I. 1981).

Under Anderson's insurance policy, MetLife's decision about a claimant's entitlement to benefits "is to be given full force and effect, unless it can be shown that the determination was arbitrary and capricious."  If it is, we set it aside.  If it's not, we give it "full force and effect."

The district court, in contrast, applied the (unique) six-step inquiry that this Court developed for cases involving ERISA benefits decisions.  *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011); *Johnson v. Reliance Standard Life Ins. Co.*, 159 F.4th 1304, 1309–10 (11th Cir. 2025).  But we see no reason to import our lengthy and sometimes confusing ERISA framework into FEGLI cases.  That's especially true since the insurance contract itself calls for arbitrary-and-capricious review.

Arbitrary-and-capricious review ultimately boils down to one question: whether the challenged decision is "reasonable and reasonably explained."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  But while this standard is "exceedingly deferential," it is not "toothless."  *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1290 (11th Cir. 2021) (quotation omitted); *Biden v. Texas*, 597 U.S. 785, 816 (2022) (Kavanaugh, J., concurring).  A claimant may prevail if the challenged decision "is without reason, unsupported

by substantial evidence or erroneous as a matter of law." *McLeod v. Hartford Life & Accident Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004) (quotation omitted).

**B.**

We start, as always, with the text of the policy. The two italicized coverage requirements drive our analysis here:

> Accidental Death and Dismemberment benefits shall be paid when an eligible Employee *sustains bodily injuries solely through violent, external, and accidental means* and not more than one year thereafter suffers any of the losses specified in this Section *as a direct result of such bodily injuries*, and independently of all other causes.

The policy goes on to catalogue a series of exclusions: "benefits will not be paid if the death or loss in any way results from, is caused by, or is contributed to by" a laundry list of various conditions or events. The first two are relevant here—the insured's "physical or mental illness" and the "diagnosis of or treatment of" that illness. Others include nuclear war, suicide, illegal drug use, or drunk driving.

MetLife denied Finney's claim for what it called two "independent and separate" reasons: (1) Anderson's death was not "accidental," thus not covered by the policy; and (2) even if accidental, the death was "contributed to by" her physical illness, and thus excluded from the policy. We agree with the latter point,

24-13140            Opinion of the Court            7

but the former is less clear.  Though MetLife's denial was ultimately correct, its analysis makes a hash of the policy's coverage provision.

First up, the insurer concluded that Anderson's death was not covered because it was not "solely" the result of her leg injury. That might be true.  But it's also an answer to a question the insurance contract does not ask.  Because "solely" modifies "injuries," not "death," the policy does not require the insured's *death* to result "solely" from an accidental injury—it requires the *injury* to be sustained "solely through violent, external, and accidental means."  Here, that much is clear: Anderson's broken leg was sustained "solely through violent, external, and accidental means" when she tripped and fell in the parking lot.  So far, then, Anderson is covered.

"Death" is limited differently in the policy: the insured's death must be the "direct result" of the accidental injury.  Here we are less sure whether Anderson qualifies.  The main reason is that we do not know what "direct result" means in this context.  But-for cause?  Proximate cause?  Something else?  The parties do not say.

We hesitate to interpret a crucial policy term without their input.[1]  Fortunately, we need not do so because another part of the

---

[1] One thing that likely threw the parties off is that the policy document states that the insured's death must result "independently of all other causes."  But that language is conspicuously missing from the regulation that defines accidental death—one that "results directly from, and occurs within one year of, a bodily injury caused solely through violent, external, and accidental means."  5 C.F.R. § 870.101 (2010).  The policy document expressly incorporates this definition.  The document further provides that "the

insurance contract is dispositive. Anderson's death was "contributed to by" her physical illness, and therefore falls under one of the policy's exclusions.

MetLife's reviewing physician determined, based on "the medical evidence provided" and "within reasonable medical probability," that Anderson's significant comorbidities "contributed to her passing." Anderson had a known history of both interstitial lung disease and chronic obstructive pulmonary disease. And these illnesses were not minor or fleeting afflictions—they were major and enduring. The record contained abundant evidence that Anderson's lung condition likely increased "the severity of her pulmonary embolism" and aggravated other conditions like pneumonia. Anderson's trip-and-fall accident obviously set off the chain of unfortunate events that ultimately led to her death. But it is equally obvious that her existing lung disease "contributed to" it. The reviewing physician's conclusion was well within bounds.

Finney's chief argument to the contrary is that this Court reached a different result regarding a different accidental death policy in a different case (under ERISA, no less). *See Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179, 1184 (11th Cir. 2004). And though the type of benefit was the same, the contract's language was not:

---

contract shall be construed so as to comply" with OPM regulations and explains that where there is an inconsistency between those regulations and the policy terms, regulations control. To the extent there is any daylight between the "direct result" test from the regulation and the "independently of all other causes" clause in the policy, the former would take precedence.

the ERISA policy in *Dixon* barred payment "for loss resulting from" the insured's illness. *Id.* at 1180. The FEGLI policy here bars payment if the insured's death "in any way results from, is caused by, or is contributed to by" her illness. So our interpretation of the one does not answer the question for the other. And contrary to Finney's suggestion, *Dixon* did not create a federal common law of accidental death policy interpretation. It instead construed a single contract—one worded much differently than this one.

Finney also argues that MetLife's interpretation of the physical illness exclusion would mean that the policy covers nothing, rendering it invalid. *See Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 966–67 (11th Cir. 2014). But that's not true. The policy plainly covers death that inarguably is caused by an accident with no contributing factors. It would be ghoulish to outline examples, but there are many obvious ones, especially where death follows a traumatic accident in seconds. And though we do not decide this interpretive question because it is unnecessary to do so here, it may well be that the exclusion would not apply if the insured's underlying illness had at most a *de minimis* role in her death. FEGLI does not invite insurers to unreasonably invoke the physical illness exclusion by pointing to a trivial connection between the insured's underlying condition and her death.

To be sure, there may be cases where it is hard to tell whether a decedent's comorbidities meaningfully contributed to her death. But this is not one of them. MetLife's decision to apply

the policy's physical illness exclusion was reasonable given Anderson's extensive physical ailments.

★    ★    ★

The physical illness exclusion in Anderson's insurance policy may seem harsh.  But we cannot undo the bargain underlying that policy by rewriting the contract to say what it does not.  Because MetLife's denial decision was not arbitrary and capricious, we **AFFIRM**.